OWINGS AND OTHERS *vs.* N. & C. WORTHINGTON.—*December* 1838.

The power vested in the levy court or commissioners of counties, by act of 1834, ch. 253, is the delegation of a special authority, and proceedings under it must display the authority by which they are had, or be in conformity thereto, or they are *coram non judice*, and void.

The application for a right of way under this act, must set forth such a way as it authorises, and to enable the commissioners to exercise any jurisdiction over the subject, a case must be presented to them in which they are competent to grant all the relief designed by the act.

The commissioners of one county could not grant a right of way into another county.

The way to be granted could not pass over a public highway; it must terminate at a public highway; and where it terminates short of a public highway, for want of jurisdiction in the commissioners to grant the right, as where it reached the boundary of their county, it will not be sustained by individual grants of a way from that point to a public highway in an adjoining county.

An application to the Chancellor to appoint an early day for the hearing of a motion to dissolve an injunction, is to his discretion, and not the subject of an appeal.

APPEAL from the Court of Chancery.

The bill in this cause, was filed on the 20th March 1837, by *Noah Worthington*, alleging that in the month of January 1836, *Caleb D. Owings* and others, by virtue of the act of 1834, ch. 253, made their application to the commissioners of *Baltimore* county to obtain *a right of way* from their farm, through the lands of the complainant; that commissioners were appointed to lay out said private way, who discharged said duty, returned their proceedings, and a right of way was accordingly granted to said applicants; that an appeal was taken therefrom by complainant, and the grant of said way confirmed; that afterwards the said *Caleb D. Owings* and others commenced certain preparations for constructing a *rail way* on the ground laid off as a private road or way; that the said parties being warned to desist from such construction, declared they would proceed unless stopped by some legal authority; that the application under the act of 1834, was *not* for a rail way, and did not authorise it; that a supplement of said act, at May

1836, prohibits the making, on any such private road or way, of any rail road or rail way, puts an end to any doubt on that subject. The bill further alleges, that the said *Caleb Owings* and others have again commenced to work on said road, with a view to the constructing of a rail way; that they are now hewing timber and laying rails on said road, having previously graded a part of said road; they have also raised an embankment three or more feet in height, and crossing a private rail road on your orator's land, by which he is put to great inconvenience and trouble. The bill then proceeded to state other incidental disadvantages, which the complainants would suffer by the construction of the rail way, and prayed for a supbœna and an injunction to desist from its further construction on the said private way, &c.

With this bill was exhibited the proceedings before the commissioners of *Baltimore* county, and the appeal thereon confirmed by *Baltimore* County Court. The Chancellor (BLAND) thereon ordered an injunction.

The appellees answered this bill, and claimed a right to construct a rail way on the private way granted, as mentioned in the bill, from the defendant's stone quarry to the *Patapsco Falls,* the dividing line between *Baltimore* and *Anne Arundel* counties, and from thence to the *Baltimore and Ohio rail road,* which was located in Anne Arundel county. The other parts of the answer necessary to be considered are sufficiently stated in the opinion of this court.

At March term 1837, the defendants filed a petition praying for an early day for a dissolution of the injunction issued in this cause, and that the complainants should give bond with security to the defendants, to indemnify them from the consequences of the injunction. This petition was dismissed; and from this order the petitioners appealed: afterwards an appeal was allowed by the Hon'ble STEVENSON ARCHER, one of the judges of the Court of Appeals, from the granting of the injunction in this cause, upon bond being filed—which being filed, the defendants appealed from the order granting the injunction and dismissing the petition aforesaid.

The act of 1834, ch. 253, was entitled an act to declare and ascertain the right of the citizens of this State to private roads and ways.

" Whereas, the citizens of this state ought to have a road or way from their farms and plantations, to places of public worship, to mills, market towns, public ferries, and court houses, and to the public highway, and while such benefit should be extended to the citizens of this State, it is but just and proper that it should be granted with as little injury or damages to the lands through which such private roads or ways shall pass, as may be consistent with the convenience of the person or persons who may need such private road or way; therefore, to accomplish these objects,

"Sec. 1. Be it enacted by the General Assembly of Maryland, that the levy court or board of commissioners, as the case may be, of the several counties of this State, on application of any person or persons for a private road or way, shall appoint three discreet and sensible persons, not related to either of the parties, of the county, who shall act as commissioners to lay out such private road or way," &c.

"A supplement to the act, entitled, an act to declare and ascertain the rights of citizens of this State to private roads or ways.

"Be it enacted by the General Assembly of Maryland, that where any private road or way has been or shall be allowed to be laid out under the act to which this is a supplement, nothing in the said act contained shall be construed to authorise the making, upon such private road or way, of any rail road or rail way."

The cause was argued before BUCHANAN, C. J., STEPHEN, DORSEY, and CHAMBERS, J.

*Dulany* for the appellants contended, that the injunction in the above cause ought not to have been granted upon the facts set forth in the bill of the appellee.

The ground relied upon in the bill, and upon which the Chancellor must also have relied, to support the injunction, is,

that the right granted to the *Owings* was for a private road or way over the lands of the appellee, and not for a *rail road.* The bill makes no objection to the grant of a private right of *way,* nor does it take any exception to the jurisdiction of *Baltimore County Court,* confirming to the *Owings* the road which had been located and awarded to them by the commissioners of *Baltimore* county. The whole complaint of the bill is, that a *rail way* was in the design of the parties, and was in the progress of construction, at the time when the bill was filed; and the question which it makes is, whether a private way, granted in pursuance of the provisions of the act of 1834, authorises the grantee to improve and render it better suited to the purposes of transportation, by constructing rails upon it.

The act authorises the grant of the *way itself,* without giving any other description of it than that it shall not exceed sixteen feet in width, "clear of ditches." It does not say that it may be gravelled, or paved, or raised where the ground is low, by having earth thrown upon it, or trees or bushes taken from its route, or large stones removed from its bed, but all this is implied in the grant of the way itself, for the object is, that the farmer may pass with facility, and carry his produce or whatever he may have to sell, to a market. This object surely could never be attained, if, while the grant of the road should be made, the means of adapting the natural surface of the earth to the purposes of transportation should be denied. Of what use would the right of a road be to any one, who should be totally debarred the use of it, by natural impediments,—as trees, or large stones, or an uneven or marshy surface? The right to the road, and the profitable enjoyment of it, include a right to the use of all the means properly adapted to its improvement for the purposes of transportation. The legislature seems to have hinted at one means of improvement, when it says, that the road shall not exceed sixteen feet, *clear of ditches;* the earth taken from which would raise the level of the bed of the road, while the ditches themselves would drain off the water from its surface and preserve it dry. The legislature do not enact that the owner of a private road shall have

this right, but they refer to it as of course, and as incidental to the right of way, and as naturally and necessarily belonging to it. He who has a road adjudged to run over the grounds of another, is not bound to leave the surface of the road in the condition in which it was condemned to his use. He has, in the contemplation of the law, a power to *improve* it for the purposes of transportation. The law, however, does not direct any particular mode of improvement; this is never the subject of legislation, but is left to the judgment of the owners, to be exercised according to the nature of the ground and the character of the property to be carried over it. Why then may not rails be laid as an improvement of a private road, when the object of the owners, as stated in the bill in this case, is, to transport stone from his quarry, which could be carried in no other way.

Can it be said that the legislature, in passing the act of 1834, did not contemplate that rail ways would be constructed on private roads, and that therefore they are illegal? My answer is, that it does not appear from the legislation of this State, that any particular mode of improvement of private ways ever came into their contemplation, either to be authorised or prohibited. They grant the right of way; they authorise the condemnation of the ground upon full compensation to the owner, and leave it to the person claiming the road to adopt such improvements as may best answer to facilitate transportation over it. But this right of improvement must be so used, like every other right, as not to be conducted in such manner, or carried to such an extent, as to injure the property of others. The bill in this case, it is true, asserts that the appellee is much injured, and put to great inconvenience, by the *rail road* running through his farm; it does not, however, distinctly aver, and could not with truth have averred, that the injury and inconvenience of which it complains, were increased by the laying of the rails upon the *road.* The answer of the appellants shews conclusively, that the injury to the appellee was lessened by the addition of the rails.

But it may be said that the act of 1835–6, ch. 362, has

given a construction to the law of 1834, as indeed it does, in terms declaring, that the last *mentioned* act shall not be construed to authorise the making of a *rail way* upon any private road theretofore granted.

Now the law of 1836 was passed in June, some time after the judgment of the court granting the private road to the *Owings*, and after the road had been partly completed and rails constructed upon it, through the lands of the appellee.

If the words of the law of 1836 be considered as embracing and prohibiting the construction of rails upon the road of the *Owings*, has not the legislature assumed, in the passage of that act, a judicial power? Suppose it is conceded, that previous to the passage of that act, the *Owings* had not only a right to construct a rail road over the lands of *Worthington*, but had exercised this right, as in fact he did, and had nearly completed his rail way over the land of the appellee; now if the act of 1836 says, that the law of 1834 gave no such authority or right, is not this strictly and properly an exercise of judicial power, which is expressly denied to the legislature by the 6th article of the declaration of rights. But in the interpretation of the law of 1834, the legislature and Baltimore county court are directly in opposition to each other;—the answer shews that the question of the right of *Owings*, under the act of 1834, to construct a rail way through the lands of the appellee, came before that court in the trial of *Worthington's* appeal from the order of the commissioners of *Baltimore* county, and was necessarily decided by the judgment pronounced by the court in that case. Now the law of 1834 makes such judgment final *between* the parties; just as if it had been determined by the highest tribunal in the State. It is true that nothing is said about a rail way in the petition of the *Owings* to the commissioners for a private road through the lands of the appellee; but the question, as to their right to lay rails on the road, came up upon the avowal of the parties at the trial, that it was their design to construct rails upon the road, and witnesses were examined on both sides, as to the additional damage which would result therefrom. The court gave their

judgment that the road should be granted to the *Owings*, upon the case made by the evidence. Can the legislature, by directing a different *construction* of the act of 1834, take away the road, or deny to the parties a means of improvement declared to be properly within their power, and without which the road would be absolutely worth nothing to them—and thus deprive them of their rights and property, by giving a construction to the act of 1834, different from the judgment of the court interpreting that law? This is the exercise of a judicial power by the legislature, and clearly contrary to the 6th article of the bill of rights, and absolutely void.

But suppose that in the act of 1836 the legislature did not usurp judicial authority, but intended merely to exert their legislative power,—still I conceive the act would be void, as taking away the right of the *Owings*, and depriving them of the beneficial enjoyment of their property, as secured to them by the judgment of the court, under the laws as they existed at the time of the judgment. As the legislature could not have authorised the condemnation of the property of *Worthington*, as a road for the *Owings*, without compensation to him, neither can they deprive the *Owings* of their road, or of any rights incidental to, or connected with it, unless upon full compensation. To take away the private property of individuals, or to deprive them of the legitimate means of a profitable enjoyment of it, would equally violate those fundamental principles by which the private rights of property are secured by the fundamental principles of every free government. 3 *Story's Com. Calder & Bull, Dallas. Vanhorn & Dorance,* 2 *Dallas.*

I have hitherto supposed, that according to the true construction of the act of 1836, it would in terms apply to the road of the *Owings*, and have objected to it upon the ground of its being oppressive and unconstitutional. But in truth that act does not apply to the case made in the bill, if indeed the court shall regard that law as an act of legislation, and not a *judicial sentence.*

The facts set forth in the bill, and also in the answer, shew, that before the passage of the law of 1835–6, the road had

been adjudged to the *Owings*, and that they had completed it in part, with the rails constructed upon it, through the lands of *Worthington.*

Now the law in substance forbids rail roads to be made on private roads, which have or may be granted. It does not direct that rail roads already constructed shall be broken up, or that those which are in the course of construction shall not be completed; and consequently, it can have *no retroactive* effect upon the unfinished road of the *Owings.* Courts will always construe laws as strictly as possible, to avoid a retrospective effect, and this rule is founded in the principles of general jurisprudence. *Devaris on Statutes,* 9 *Law Lib.* 34, 35. "Here is a vested right," says *Lord Mansfield,* "and it is not to be imagined that the legislature could, by general words, take it away." *Ibid* 35. The rail roads, then, against which the statute is directed, are rail roads *to be commenced after its passage,* and cannot refer by the rules of construction to those which are in an unfinished state or nearly completed, and upon which much labor and expense have been employed.

Should the appeal in this case be dismissed, the appellants contend that the injunction should not be continued until final hearing, without a bond by the appellee to indemnify the appellants from any injury they may sustain by reason of the injunction,—the answer sets forth the facts, showing how great the damage is that may be occasioned to the appellants by interrupting the completion of their road, and indeed this sufficiently appears from the bill itself; and the act of 1835, ch. 380, sec. 3, directs, that this court "shall pass such order in the premises as to it may seem right." Ought not the appellee then, as a condition to the continuance of his injunction, to be directed to give bond with proper security to indemnify the appellants. The Chancellor erred in granting the injunction without bond, and this error I apprehend may be rectified or remedied by the power given to this court under the above act.

*S. I. Donaldson* and *R. Johnson* for the appellees.
This case presents but two questions: *First,* Does the act

of 1834, ch. 253, under which the application for the road in the proceedings mentioned was made, contemplate the making of a rail road; and *Second*, If it does, what effect has the subsequent act of May 1835, ch. 362, upon the proceedings in the particular case, under the circumstances of the case when that act was passed.

A very few remarks will put the court in possession of the views of the counsel of the appellee upon each question.

*First.* What is the construction of the act of 1834?

It will not be denied that, as far as we have any knowledge upon the subject, no private *rail* road was ever before attempted to be constructed, either under the original act of 1785, ch. 49, repealed by that of 1834, or under that act.

The character of the road to be made necessarily enters into the estimate of the damages to be sustained by the owners of land over which it is to pass. A road of the ordinary kind, offering little or no difficulty to the owner of the soil in passing to and fro, graded in the ordinary form, and but slightly varying from the elevation or depression of the ground over which it traverses, subjects the proprietor to little comparative loss, with a road graded to a level suited for a rail road. For that purpose, hills must be cut down; valleys filled up by embankments; the ground to construct the embankment be obtained; and, in the general, necessarily attended with essential mischief to the proprietor of the soil.—Passing from one side to the other of the road often rendered impossible, and the loss of soil itself necessarily greater than in the case of an ordinary road. If the right asserted by defendants—the appellants—exists, it is manifest, that without getting such compensation, (for the applicant is not obliged to disclose his intention to make a rail road) his property may be taken from him greatly to his injury. Beside this, if there is a right to lay the rails, there is the corresponding right to use the road, as such roads are usually used, and of course the proprietor of the ground may be subjected to injurious effects upon his cattle, &c., by the use of locomotives, and to their irreparable annoyance, and this without the proper compensation.

*Second.* What is the effect of the act of 1835?

In the first place, it is at best a legislative interpretation of the intent of the act of 1834, and strengthens in that view what we contend for upon the first question.

But, as an independent enactment, it prohibits the rail road in this case.—Whatever may be the general rule in the construction of statutes, that they are to be applied only prospectively, the rule is equally settled, that if the clear meaning of its terms is retrospective, as much as prospective, they must be so construed. The cases upon this subject were cited to the court in the case, argued at the present term, of *Laurence and Heister.*

The words of this act are in this particular too plain to admit of doubt. Is there then any constitutional difficulty in applying the act to this case? We contend not. The payment in part of the compensation awarded by the county court, and the tender of the balance, gives no right unless it is clear that the sum so awarded was adjudged for the loss to be occasioned not only by the making of a road, but of a rail road. If not, the laying of the rails in part, though perhaps independent of the act of 1835, it might have been done because not expressly prohibited, was not such an executed judgment as puts it out of the power of the legislature to prohibit the making of a road from which the proprietor of the soil was not fully indemnified.

DORSEY, Judge, delivered the opinion of the court.

The application in this case is for a private road or way to the *Patapsco Falls,* to pass over the same in order to reach the *Baltimore and Ohio rail road,* which is the nearest convenient public road to the farm of the petitioner. The applicants also state, that after they cross the said falls, they have obtained the permission of all those who own the lands in *Anne Arundel* county, through which it is proposed to carry said private road, that the same may be made to the said rail road free of any compensation for such permission. The powers vested in the levy court or commissioners by the act of 1834, is a delega-

tion of a special authority, and the proceedings under it must display the authority by which they are had, and be in conformity thereto, or they are *coram non judice* and void. The application must set forth such a private road or way as the commissioners or levy court are authorised to grant, or they have no jurisdiction over the subject matter, and all their proceedings are a nullity. The appellants applied for a private road or way to the *Patapsco Falls*, which is not, and could not have been, alleged to be a public highway, or any other of the places enumerated in the act of assembly. To warrant the action of the commissioners to enable them to exercise any jurisdiction over the subject, a case must be presented to them in which they are competent to grant all the relief designed for the applicants; by the act of assembly they must have the power of granting the way to the *Baltimore* and *Ohio rail road*, or they have no power at all. A case like the present was not contemplated or provided for by the act of assembly. No action could, in such a case, have been had by the levy court or commissioners of *Anne Arundel* county, and the allegation, that the intervening land holders in *Anne Arundel* had granted permission for the extension of the private road to the *Baltimore* and *Ohio rail road,* could not confer on the commissioners of *Baltimore* county, a jurisdiction they did not otherwise possess. Had a continuous way in both counties been looked to by the legislature, the appropriate means of locating it would have been provided. If it be held sufficient to entitle a party to a private road or way to any point or place not specified in the privilege granted by the act of assembly, simply by the allegation that from that point or place he has permission of the intermediate land holders to extend the way to some of the places enumerated in the law, all the limitations and restrictions as to place, in the granting of private ways, become a dead letter, and an applicant may obtain a private way any where, without reference to the place or object for which it is granted, in direct violation of both the letter and spirit of the act of assembly. An insuperable objection also to the granting of the way, as prayed for, is, that it crosses a public highway before it reach-

es the *Patapsco Falls,* which the act of assembly does not warrant. It authorises the grant of a private way to a public highway, not the crossing and going beyond it. The only remaining ground of appeal from the proceedings of the Chancellor is, the dismissal of the appellant's petition, praying for the appointment of an earlier day for the hearing of the motion to dissolve the injunction, and for an order on the appellee to file an injunction bond. · The appellants having appeared in the Chancery court, filed their answer and entered on the docket notice of motion to dissolve the injunction, to be heard at the succeeding July term, it is difficult to conceive what benefit could result from an appeal from the decision of the Chancellor, on such an application as that now before us. The application too, from its nature, was an appeal exclusively to the discretion of the Chancellor, over which this court have no control. From the views hereinbefore expressed upon the merits of this controversy, and the rights of the parties, we could not do otherwise than approve of the Chancellor's dismissing the appellant's petition, so far as it applied to the granting an order to the appellee to file an injunction bond.

The orders of the Chancellor appealed from are affirmed with costs, and cause remanded to the Chancery court.

ORDER AFFIRMED.

BUCHANAN, C. J., dissented.