THE BOARD OF COUNTY SCHOOL COMMISSIONERS OF
WASHINGTON COUNTY (NEW BOARD) *vs.* THE BOARD
OF COUNTY SCHOOL COMMISSIONERS OF WASHINGTON
COUNTY, (OLD BOARD.)   THE COUNTY COMMISSION-
ERS OF WASHINGTON COUNTY *vs.* SAME.   THE
COUNTY COMMISSIONERS OF WASHINGTON COUNTY,
AND THE BOARD OF COUNTY SCHOOL COMMISSIONERS
OF WASHINGTON COUNTY (NEW BOARD,) *vs.* SAME.

*Mandamus—Title to Office—Board of School Commissioners
Holding over—Injunction—Right to School funds—Action
not Reriewable on Appeal.*

When a person has been duly appointed to a public office, and has
qualified, he has a right to enter upon the discharge of his duties;
and if he be prevented by a former incumbent from obtaining
possession of the office, an adequate and complete remedy is
afforded at law by writ of *mandamus;* and consequently a Court
of equity is debarred from determining the title to an office as
between conflicting claimants.

Where a board of school commissioners, who are in possession of
their office by appointment of the Judges of the Circuit Court,
under the Act of 1872, ch. 377, and are discharging its duties,
refuse to surrender to a new board appointed by the Governor
under the Act of 1892, ch. 341, the Courts ought to aid the old
board in obtaining the money which has been set apart for the
maintenance of the public schools, as long as it is in actual
and visible possession of the office, so that there shall be no stop-
page of the public business.

The Act of 1886, ch. 441, (Art. 16, sec. 177, of the Code) which pro-
vides that "the Court may at any stage of a cause or matter, on
the application of any party thereto, or party in interest, by
motion or petition, or of its own motion, order the issue of a man-

NOTE.—For a very extensive presentation of the subject of mandatory, injunc-
tions, see *note* to *Moundsville vs. Ohio River Railroad Co.* (*W. Va.*) 20 *Law Reps. Anno.*,
161.

date or injunction directing and commanding any party to such cause or matter, or any party properly brought before it under the existing practice, to do, or abstain from doing, any act or acts, whether conjointly or in the alternative, whether in the nature of specific performance, or otherwise, named in such mandate or injunction, and may make such terms and conditions (as to security, &c.,) as to it may seem fit, preliminary to the granting of such mandate or injunction," authorizes an injunction enjoining the county commissioners from refusing to pay to the treasurer of the old board money which was payable to the board of school commissioners.

The refusal of the Circuit Court of an application that the complainants be required to give an injunction bond, is within the discretion of the Court and cannot be reviewed on appeal.

APPEALS from the Circuit Court for Washington County, in Equity.

The first and second appeals were taken from the decree of the lower Court granting an injunction; and the third appeal was taken from the refusal of the Court to require the complainants to give an injunction bond. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., BRYAN, FOWLER, PAGE, ROBERTS, McSHERRY, and BRISCOE, J.

*John Prentiss Poe, Attorney-General,* (with whom were *Buchanan Schley,* and *Frederick F. McComas,* on the brief,) for the appellants, the New Board of School Commissioners.

*Henry Kyd Douglas,* for the appellants, the County Commissioners.

The Court had no right in this proceeding to enter upon the discussion of and determine the question which of the two claimants was the *de facto* board of school commissioners. Each claimed to be such; their title as such was in dispute as much as the legality of their

respective appointments. When one set of officials claim to be such *de jure,* and another set are admitted to be *de facto* officers, a Court of equity may regard the position of the latter as conceded and decree accordingly. But when both claim to be officially *de facto* as well as *de jure,* it is not competent for a Court of equity in a proceeding like this to determine which are *de facto* officers or which are *de jure* officers. The reason for the prohibition is the same, and parties seeking its aid must be remanded to their legal remedy. 2 *High on Injunctions, secs.* 1256, 1312, 1315; *District Township of Soldier vs. Barrett,* 47 *Iowa,* 110; *Tappan vs. Gray,* 9 *Paige,* 507, 7 *Hill,* 259; *Peet vs. White,* 43 *Iowa,* 400; *Colton vs. Price,* 50 *Ala.,* 424; *Beebe vs. Robinson,* 52 *Ala.,* 66, and 54 *Ala.,* 320; *People vs. Draper,* 24 *Barb.,* 265, and 14 *How. Pr.,* 233; *Hinckley vs. Breen,* 55 *Conn.,* 120.

But it is apparent from the testimony and proceedings in the cause that the complainants are not the *de facto* school commissioners of Washington County. Every allegation of the bill to that effect is explicitly denied and sworn away by the answers of both defendants.

It was error for the Court below to enjoin the county commissioners from paying over any moneys due to the new school board.

If this was merely a question as to which of the two claimants was the *de facto* board—a question of fact and not of law—was it competent for a Court of equity in this proceeding to command the county commissioners to recognize either? The county commissioners are the custodians of the county moneys; was it not their right and duty to ascertain which was the *de facto* board and to be satisfied of that fact before paying out to either board any of the school moneys? In the absence of any determination of legal right, and especially in a proceeding in which the Court does determine that it has no jurisdiction to settle the question of title, can it

286 MARYLAND REPORTS.

County Comm'rs of Wash. Co. *vs.* School Comm'rs of Wash. Co.

be competent for the Court to take away from the county commissioners their lawful discretion in the expenditures of the public money?

Courts of equity do not grant injunctions on suspicion, or groundless allegations of suspected intentions. And as the complainants had no claim to the ultimate relief sought by the litigation, there can be no ground for injunction. 1 *High on Injunctions, chap.* 1, *secs.* 9–11; *People vs. Draper,* 24 *Barb.,* 265, and 14 *How. Pr.,* 233; *Tappan vs. Gray,* 9 *Paige,* 507, and 7 *Hill,* 259.

But the Court below went further and commanded the county commissioners to pay over to the examiner of the old board all school moneys due at the time of the order.

This was a heroic conversion of a bill in equity for injunction into a *mandamus* proceeding, and, as we think, an exercise of the powers of both a Judge and jury. In effect it is simply an order to the county commissioners to disregard the new board and recognize the old, by paying all moneys over to it. This makes short work of all the questions involved!

*Alexander Neill,* and *Wm. Pinkney Whyte,* (with whom were *J. A. Mason,* and *J. Clarence Lane,* on the brief,) for the appellee.

The decree of the Court below is right, and should be affirmed.

First. Because the school commissioners for Washington County appointed by the Governor under the Act of 1892, ch. 341, were without authority to act as such, their appointment being made in violation of the Act of Assembly, and the Constitution (section 10, of Article 2). *Dyer vs. Bayne,* 54 *Md.,* 87, 98; *Watkins vs. Watkins,* 2 *Md.,* 341; *Tyler vs. Hebden,* 24 *Md.,* 202, 210; *Magruder vs. Swann,* 25 *Md.,* 173, 214; *Smoot vs. Somerville,* 59 *Md.,* 84, 88, 94; *Cantwell vs. Owens,* 14 *Md.,* 215.

JANUARY TERM, 1893.          287

County Comm'rs of Wash. Co. *vs.* School Comm'rs of Wash. Co.

Second. Because the appellee being the *de facto* board of school commissioners of Washington County can be displaced from their office, even by legally appointed successors, only through proper proceedings in a Court of law. *Taylor vs. Hebden*, 24 *Md.*, 202; *Harwood vs. Marshall*, 9 *Md.*, 83; *Harwood vs. Marshall*, 10 *Md.*, 451; *Brooke vs. Widdicombe*, 39 *Md.*, 386; *Bucknam vs. Ruggles*, 15 *Mass.*, 180; *Commonwealth vs. McCombs*, 56 *Pa.*, 436; *State vs. Howe*, 25 *Ohio St.*, 588; *Braidy vs. Theritt*, 17 *Kan.*, 468; *State vs. Jones*, 19 *Ind.*, 356; *Leach vs. Cassidy*, 23 *Ind.*, 449; *The Mayor, &c., of the City of N. Y. vs. Conover*, 5 *Abb. P. R.*, 179; *State vs. Durkee*, 12 *Kan.*, 308; *Guillotte vs. Poincy*, 41 *La.*, 333, (5 *L. R. A.*, 403); *Hamlin vs. Kassafer*, 15 *Or.*, 456, (3 *Am. St. Rep.*, 176); *Ex Parte Strang*, 21 *Ohio St.*, 610; *State vs. Carroll*, 38 *Conn.*, 449, (9 *Amer. Rep.*, 409;) *Brady vs. Sweetland*, 13 *Kan.*, 41; *Palmer vs. Foley*, 45 *How. Pr.*, 110; *Morawetz on Corp.*, (2nd Ed.,) sec. 640; 5 *Waits' Actions & D.*, 7; *State vs. Blossom*, 19 *Nev.*, 312, 11 *L. R. A.*, 105, (note;) *Carli vs. Rhener*, 27 *Minn.*, 293; *Steinback vs. State*, 38 *Ind.*, 489; *Cronin vs. Grundy*, 16 *Hun*, 524, 13 *L. R. A.*, 177, (note); *McCahon vs. Comm'rs of Leavenworth Co.*, 8 *Kan.*, 441; *Boardman vs. Halliday*, 10 *Paige*, 232, (4 *N. Y. Ch. L., Ed.*, 953); *Morgan vs. Quackenbush*, 22 *Barb.*, 80; *Cohn vs. Beal*, 61 *Miss.*, 399.

Third. Because until so displaced by the establishment of a superior title, the old board of school commissioners were entitled to the aid of a Court of equity in the performance of the duties of the office. 2 *High on Injunctions*, (2nd Ed.,) sec. 1315; *Guillotte vs. Poincy*, 41 *La.*, 333, (5 *L. R. A.*, 403); *Cooley's Cons. Lim.*, 107, note 2; *Locke vs. Speed*, 62 *Mich.*, 408; *Jones and Anderson vs. Keating, et al.*, 55 *Md.*, 145; *Davis vs. The State*, 7 *Md.*, 151–161; *Mayor, &c., of Baltimore vs. State, ex rel. the Board of Police of the City of Baltimore*, 15 *Md.*, 376; *Walker vs. City of Cincinnati*, 21 *Ohio*, 14, 49;

*Sweet vs. Hulbert*, 51 *Barb.*, 315; *People vs. Hoffman*, 3 *West. Rep.*, 522, (*Ill.*); *Ex Parte Siebold*, 100 *U. S.*, 371; *Story Eq. Jur.*, sec. 64 *k*, note 3; *Kerr on Inj.*, 231; 1 *Pomeroy Eq. Jur.*, secs. 235, 236; *People, ex rel. vs. City of Chicago*, 53 *Ill.*, 425; *Armstrong and Barnwall vs. Gilchrist*, 2 *John. Cases*, 424; *Hardcastle vs. The Md. & Del. R. R. Co.*, 32 *Md.*, 32; *Cumb. & Penn. R. R. Co. vs. P. R. R. Co.*, 57 *Md.*, 267–271; *Page vs. Mayor, &c., of Baltimore*, 34 *Md.*, 564; *Western Maryland R. R. Co. vs. Patterson*, 37 *Md.*, 138; *Mott, et al. vs. Penn. Railroad Co., et al.*, 30 *Penn.*, 9.

BRYAN, J., delivered the opinion of the Court.

By the Act of 1892, chapter 341, the Legislature made important changes in the School Law. This Act authorized the appointment of the boards of County School Commissioners by the Governor; thus taking the appointment out of the hands of the Judges of the Circuit Court to whom it had been confided by the Act of 1872. The Governor appointed six School Commissioners for Washington County, and they in due time qualified according to law, and elected a person to fill the office of secretary, treasurer and examiner. The School Commissioners who were in office at the time of the passage of the Act above-mentioned, and whom for convenience we shall designate as the Old Board, refused to surrender to their successors the books, papers and official seal of the Board, and have appointed trustees for the school districts, and school teachers, wherever necessary, and have retained control of the public schools in Washington County. The Commissioners appointed by the Governor, whom we shall call the New Board, have taken no steps to obtain, by the aid of the law, possession of the offices to which they have been appointed. The Old Board filed a bill in equity in the Circuit Court for Washington County against the County

County Comm'rs of Wash. Co. *vs.* School Comm'rs of Wash. Co.

Commissioners, praying for an injunction to restrain them from paying to any person other than their secretary and treasurer any money due and payable to the Board of County School Commissioners of Washington County.  On petition of the New Board and their secretary, treasurer and examiner, they were by order of Court admitted to appear in the suit as parties defendant.  They as well as the County Commissioners answered the bill of complaint.  When the cause was heard, the Court passed a decree enjoining the County Commissioners from paying to the treasurer of the New Board, or to any other person than the treasurer of the Old Board, any money which was payable to the Board of County School Commissioners, and also enjoining them from interfering with the Old Board in the performance of its duties, and also enjoining them from refusing to pay to the treasurer of the Old Board any money due to the Board of School Commissioners.  Appeals were taken by the County Commissioners and by the New Board.

When a person has been duly appointed to public office, and has taken the prescribed oath, and done such other things as are made prerequisites by law, he has a right to enter upon the discharge of his duties.  If he is prevented by a former incumbent from obtaining possession of the office, the law affords a perfectly adequate and complete remedy.  In this State the usual and appropriate proceeding is by writ of *mandamus,* of which a great many instances are found in our reports.  It is a legal remedy, that is to say, it is administered on the law side of the Court, as contradistinguished from its equitable jurisdiction.  Hence it is held, as there is a complete, perfect, and adequate remedy at law, that a Court of equity is debarred from determining the title to an office disputed between conflicting claimants.  It will be thus seen that it was not within the power of

the Court below to adjudicate which of the rival Boards was the lawful Board of School Commissioners, and consequently it is not within the power of this Court on appeal in this case.   This Court has on rare occasions expressed an opinion on a question not presented by the record; but it has always been in a case where it was seen that it would  terminate the existing controversy. If we were to express an opinion in this case, we have not the power to give effect to it by putting either Board in possession of the office; and we do not see how we would in any way promote the public interest by a departure from the usual course of confining our opinion to the matters presented for decision by the record.

The Old Board were appointed many years ago by the Judges of the Circuit Court, and by virtue of that appointment are now in possession of their office, and are exercising its functions, and discharging its duties. We cannot recognize them as officers *de jure;* because by the terms of the statute of 1892 the appointment and qualification of their successors put an end to their official term.   As we have said, we have not the power in this case to adjudicate the validity of the title thus acquired ; and likewise we have not the power to adjudicate the validity of the title of the old incumbents. But it is our duty to recognize the visible facts of the case, and to deal with them.   The public interest requires that the duties of the Board must be performed by somebody.   The Board was not established for the benefit of individuals ; but to accomplish high and paramount objects of public policy.   It could never be tolerated that the course of public education should be arrested, while a contest was waged to determine what individuals should administer the system.   It is on considerations of this kind that the law recognizes a *de facto* officer, and not from any regard to his personal interests.   The public business must be transacted, and therefore his official acts performed in

JANUARY TERM, 1893.        291

County Comm'rs of Wash. Co. *vs.* School Comm'rs of Wash. Co.

doing what the law requires to be done must be sustained as valid. There is no alternative between this course and the stoppage of the public business; and this latter result is, of course, out of the question. If the *de facto* officer is to discharge the duties of his office, he must have a right to use the means which the law has provided for the purpose. And it would be in vain to give him the right to the means, if the Courts should refuse him their aid in obtaining them. Upon these grounds, we think, that the Courts ought to aid the Old Board in obtaining the money which has been set apart for the maintenance of the public schools; that is to say, as long as the Old Board is in actual and visible possession of the public trust once confided to it; but no longer. It will be perceived that we are speaking exclusively of such matters as affect the public interest, and have no reference whatever to such acts of a *de facto* officer as concern his own personal interests. It is not necessary now to say more on this latter question, as it may come before us hereafter in a proceeding where it will be directly presented.

The injunction decreed by the Circuit Court is peculiar in its form. It enjoins the County Commissioners from refusing to pay to the treasurer of the Old Board money which was payable to the Board of School Commissioners of Washington County. This, of course, is equivalent to an affirmative order that they shall make such payment. In *Carlisle vs. Stevenson,* 3 *Md. Ch. Dec.,* 503, Chancellor JOHNSON said, that this form of injunction originated with *Lane vs. Newdigate,* 10 *Vesey,* 193, and that the principle of that case seemed never to have been repudiated. This practice is entirely unobjectionable; but it does not seem to have been frequently followed in this State. The injunction decreed was, however, not within the special prayer for this writ contained in the bill of complaint. But the Act of 1886, chapter 441, (Code, Article 16, section 177,) provided that "The

Court may, at any stage of a cause or matter, on the application of any party thereto, or party in interest, by motion or petition, or of its own motion, order the issue of a mandate (affirmative injunction) or injunction, directing and commanding any party to such cause or matter, or any party properly brought before it under the existing practice, to do, or abstain from doing, any act or acts, whether conjointly or in the alternative, whether in the nature of specific performance, or otherwise named in such mandate or injunction, and may make such terms and conditions (as to security, etc.,) as to it may seem fit, preliminary to the granting of such mandate or injunction." We think that the injunction was authorized by this legislation. After the decree had been passed by the Circuit Court, the defendants filed a petition that the Court would require the complainants to give an injunction bond, and the application was denied by the Court. This matter was within the discretion of the Court, and cannot be reviewed here. The Court fixed the penalty of the appeal bond, but ordered that the bond should not suspend the execution of the decree. The Act of 1890, chapter 32, gave the Court the discretion to pass such order. If we had the power to review this order, no effect would result from setting it aside, as we have concluded that the decree ought to be affirmed. When the Court decided that the execution of its decree should not be stayed by the appeal bond, it ordered that the County Commissioners should pay the treasurer of the Old Board the money payable to the School Commissioners. This was merely repeating the decree already passed, and requiring that it should be obeyed. It has been seen that this is our opinion.

> *Decree affirmed, with costs*
> *to be paid by the County Com-*
> *missioners out of the County funds.*