THOMAS J. WALSH ET AL., RELATORS, v. CHARLES F. THOMPSON, COUNTY CLERK, RESPONDENT.

Submitted January 8, 1915—Decided April 10, 1915.

Where the act of 1890, *p.* 276 (*Comp. Stat., p.* 2912), requires the county clerk to pay certain license fees collected by him to the body or person entitled to the legal custody of the funds of a municipality in his county, and it appears that the affairs of such municipality are being administered by an organized government whose title is at least colorable, and its finances conducted by one holding as the financial officer of that government, *mandamus* will issue to compel payment of such moneys to said officer, notwithstanding the existence of a dispute as to the *de jure* character of his tenure.

On rule to show cause why *mandamus* should not issue.

Before Justices SWAYZE, PARKER and KALISCH.

For the relators, *Luther Shafer.*

For the respondent, *Addison Ely.*

The opinion of the court was delivered by

PARKER, J. The proceedings in the township of Union, in the county of Bergen, looking toward the adoption of the "Walsh act" of 1911 for the government of that township and alluded to in *Connolly* v. *Smith,* 86 *N. J. L* 466, give rise also to this case, which is an application by the board of commissioners under that act for a *mandamus* requiring the county clerk to turn over to the relator Walsh, as the person entitled to the legal custody of the funds of said township, the sum of $2,988.75 collected by said clerk for liquor licenses, pursuant to the act of 1890, page 276. *Comp. Stat., p.* 2912. The clerk concedes that the money is in his hands and professes readiness to pay it over to the proper financial officer of the township, but claims that he is not safe in paying it to relator on account of irregularity in the

Walsh act proceedings which, as he maintains, invalidates Walsh's title to the office of director of revenue and finance, which he claims to hold. The attack is not only on the entire Walsh act government, but on the status of relator as a member thereof. The history of the proceedings relating to the adoption of the Walsh act is as follows: Upon the filing of the usual petition, the same appearing to have the required number of qualified signers, an election was had in the fall of 1913 and the Walsh act form of government received the necessary votes for adoption. The election for commissioners was then held, and only two of the three required by the law received a majority, the vote for a third being a tie. Thereupon the elected commissioners, on the theory that a "vacancy" had "occurred," undertook, pursuant to section 2 of the act (*Pamph. L.* 1911, *p.* 463) to fill it, and elected relator Walsh, who was subsequently placed in charge of the finances as "director of the department of revenue and finance." Section 4, page 466. These three commissioners have since been administering the township government with the recognition and assent of the citizens at large. As to this fact there is no reason to doubt. But the members and officers of the former township government seem to have refused to recognize the new order of things, and the controversy between the two sets of officials is now laid before us as a reason for refusing the writ now prayed. It is claimed that the original petition did not have the required number of names, and that even if the new form of government was lawfully adopted, and if two of the three commissioners were regularly elected, they could not lawfully select the third, because the statute did not contemplate such action in case of an original vacancy.

Into these questions we ought not to enter. With respect to the Walsh act government generally, it is plain that the defence is a collateral attack upon a *de facto* government, and this the court will never permit. In *Attorney-General* v. *Dover*, 62 *N. J. L.* 138, this court refused to *mandamus* the governmental organization created by an act of 1869 to take up governmental functions as against an actual *de*

*facto* government organized under a later act of 1895, although in a *quo warranto* suit by the attorney-general against that *de facto* government the court had just declared the act of 1895 unconstitutional (*Id.* 40), and the matter was then pending before the Court of Errors and Appeals, where the judgment of ouster was afterwards affirmed. *Id.* 647. We said at page 141, that a *de facto* government "must prevail and be respected until the attorney-general intervenes by *quo warranto* and through judicial action secures the actual ouster and removal of the incumbents in office." In the case at bar not only is no *quo warranto* by the attorney-general pending against the new government, but concededly such a suit is pending against the old one.

In *Rellstab* v. *Belmar,* 58 *N. J. L.* 489, the imposition of a tax was resisted on the ground that the borough was not legally incorporated, but while this court set aside the tax sale because illegal interest had been charged, it affirmed the tax assessment and refused to consider a challenge of the legality of the incorporation in that suit.

Even if there is a direct controversy over an office, the legality of the existence of a public corporation cannot be drawn in question therein. *Steelman* v. *Vickers,* 51 *N. J. L.* 180; *Morris* v. *Fagen,* 85 *Id.* 617.

A similar rule prevails with regard to collateral attack on the status of a *de facto* officer, such as the relator. His acts as such *de facto* officer are valid as to the public and third persons. *Mitchell* v. *Tolan,* 33 *N. J. L.* 195. His title need be no more than colorable. *State* v. *Zeller,* 83 *Id.* 666. Such an officer is entitled to recover the lawful compensation for the office. *Erwin* v. *Jersey City,* 60 *Id.* 141; *Brinkerhoff* v. *Jersey City,* 64 *Id.* 225.

In this case the money demanded belongs to the township. The county clerk is commanded by the statute to pay it to the person entitled to the legal custody of the funds of the township. It is no part of the clerk's duty to decide who, in the last analysis, is that person; only the court, on a *quo warranto,* can do that. So long as a person actually occupying and exercising the office as part of an actually

operating government of the township under color of title, presents the claim on behalf of the township, the county clerk is fully protected in making the payment, and the courts will take care of its proper application. In such case his duty is plain, and that is to pay over the money to the officer shown to be exercising the functions of the office under color of right. The public interest demands that the duties of the office be performed, and that the machinery of government be not stopped because of any dispute as to who is to operate it. Accordingly it is held that a *de facto* treasurer is entitled to taxes received by the tax collector (*Trescott* v. *Moan,* 50 *Me.* 347), and that a *de facto* school board may recover school funds. *School Commissioners* v. *School Commissioners,* 77 *Md.* 283; 26 *Atl. Rep.* 115. There are cases to the contrary, as for example, *People* v. *Weber,* 86 *Ill.* 283, but they are not in accord with the theory of our own adjudications. In *Harvey* v. *Philbrick,* 49 *N. J. L.* 374, a *de facto* borough commissioner ordered payment of a claim, and its disbursing officer refused to pay on the ground that the commission was not *de jure,* but this court awarded a *mandamus,* saying that as the commission was a *de facto* body, the treasurer had no option and that his duty was to pay. This is the converse of the case at bar, but illustrates the principle.

In *Kimball* v. *Hendee,* 57 *N. J. L.* 307, a *mandamus* was awarded to compel the township collector to pay the warrant of a school board in favor of relators, notwithstanding the existence of a conflict of title between that board and another one, on the ground that the board making the warrant was a *de facto* board and that its acts in which third persons were interested could not be impugned on the ground of an alleged defect in title. In the case at bar not merely certain individuals, but the entire public is interested in the collection of these moneys and their application to the purposes of the township.

There is some claim that the old government maintains an organization including a township treasurer. But the evidence clearly shows that the commission is the only body

conducting the current affairs of the township. As to the treasurer, it was intimated in *Connolly* v. *Smith, supra,* that his term of office had expired. If so, unless some other title or color of title to the office appeared, he would be not even a *de facto* officer. *Loughran* v. *Jersey City,* 86 *N. J. L.* 442.

We think that relators are entitled to a peremptory writ.