THOMAS W. FORBES AND OSBORNE I. YELLOTT,
ADMINISTRATORS, PEDENTE LITE,

*vs.*

S. DAVIES WARFIELD.

JOHN R. VALENTINE

*vs.*

SAME.

*Injunctions: motion to dissolve; appeals.*

From the action of a court, in refusing to hear a motion to dissolve an injunction on a particular day, or from its action in refusing to hear the motion pending the complainant's appeal, no appeal lies.                                    p. 406

While every delay in the hearing of a motion to dissolve an injunction operates to continue the injunction for the time being, yet it is not every such postponement that amounts to a refusal to dissolve the injunction as to constitute the basis for an appeal, either under section 27 of Article 5 of the Code, or under section 200 of Article 16 of the Code.          p. 406

An appeal will not lie from an order or decree passed in the undoubted discretion of the lower court.                p. 407

Whether in any particular case the execution of a decree or order appealed from shall be stayed by an appeal, is left by the Code within the discretion of the lower court.          p. 407

*Decided March 13th, 1917.*

Two appeals in one record from the Circuit Court for Baltimore County. (DUNCAN, J.)

The causes were argued together before BOYD, C. J., BRIS-
COE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and
CONSTABLE, JJ.

*Frank Gosnell* (with whom was *Geo. Weems Williams* on
the brief), for the administrators.

*Osborne I. Yellott,* for John R. Valentine.

*George Whitelock* (with whom were *T. Scott Offutt, John
B. Deming* and *W. Thos. Kemp* on the brief), for S. Davies
Warfield.

THOMAS, J., delivered the opinion of the Court.

On the 1st of November, 1915, the appellee, S. Davies
Warfield, filed in the Circuit Court for Baltimore County a
bill of complaint against Thomas H. Emory and John R.
Valentine, alleging that on or about September 27th, 1915,
he and Thomas H. Emory entered into an agreement in writ-
ing by which Thomas H. Emory agreed to sell to him two
adjoining farms or tracts of land, situated in Baltimore
County, Maryland, containing in the aggregate about seven
hundred and seventy-five acres of land, for which he agreed
to pay $70,000.00; that two days later Thomas H. Emory
telegraphed him that he had received from the defendant,
John R. Valentine, an offer of $80,000.00 for said prop-
erty; that he promptly replied to the telegram that he had
already contracted to purchase the property and that he
would insist upon the performance of the contract.

The bill further avers that John R. Valentine, with full
knowledge of the contract between the plaintiff and Thomas
H. Emory, and with the fraudulent purpose of depriving the
plaintiff of the benefit thereof, and desiring to secure from
the plaintiff some admission that would induce Thomas H.
Emory to enter into a contract of sale with him, invited the
plaintiff to meet him in New York, which the plaintiff did
on the 21st and 22nd of October, 1915; that at said meeting

the plaintiff and Valentine agreed that the "continuance of the discussion between them respectively and the said Emory would operate to the great prejudice of both of them," and that they thereupon agreed that they should both "presently withdraw from the purchase of the property from Emory, with the further understanding that neither your orator nor the said Valentine would directly or indirectly attempt to purchase the same without first receiving the consent of the other, and that they would severally forthwith telegraph to the defendant Emory their respective withdrawals from the purchase thereof, it being further understood that if either your orator or said Valentine should thereafter buy the said property, the other should be considered as having a share or interest in the same"; that in pursuance of said agreement with Valentine, the plaintiff on the 22nd of October, 1915, sent a telegram to Thomas H. Emory "withdrawing from the purchase" of the property, but that Valentine, "in flagrant violation of" their agreement, through his agent, Frank Bonsal, entered into a contract with Thomas H. Emory for the purchase of the property at the price of $80,-000.00, less broker's commissions of five per cent.

The bill prayed that the telegram from the plaintiff to Thomas H. Emory and the contract between the defendants, Emory and Valentine, be annulled and set aside; that the contract of September 27th, 1915, between the plaintiff and Emory be specifically enforced; that if for any reason the Court should decline to decree specific performance of said agreement between plaintiff and Emory, that a decree be passed declaring that Valentine purchased the property in trust for himself and the plaintiff, and for an injunction restraining the defendants from taking any steps in performance of said contract of sale between the defendants until the further order of the Court.

The injunction was granted as prayed, and on the 31st of January, 1916, the defendants filed their answer, admitting the contract of sale between the defendants, but denying the

other averments of the bill upon which the plaintiff based his claim to the relief prayed.

On the 24th of Februry, 1916, the plaintiff filed exceptions to certain portions of the answer, and on the 20th of March the Court below sustained the exceptions, with leave to the defendants to amend, etc. The plaintiff filed a general replication on March 27th, and on the 18th of July the defendants gave notice of their purpose to take the testimony of Thomas H. Emory and Dr. Brown at Saranac Lake, New York. On the 6th of September, 1916, the defendant, John R. Valentine, filed a petition, alleging that Thomas H. Emory died on August 15th, 1916, and praying the Court in its final decree to order and direct the proper representatives of Thomas H. Emory to execute to him a deed for the property. On the same day Theodore W. Forbes and Osborne I. Yellott filed their petition, alleging that Thomas H. Emory died leaving a last will and testament; that a caveat had been filed to said will; that letters of administration *pendente lite* had been granted to them by the Orphans' Court of Baltimore County, and that said Court had passed an order authorizing them to intervene in this case. The petition prayed that they be made parties defendant in the case, and on the same day the Court below passed an order making them parties defendant, provided a copy of the order be served on the plaintiff and the defendant Valentine, on or before the 12th day of September, 1916. On the 8th of September the plaintiff filed a petition for the appointment of a receiver to take charge of the property, and the Court below appointed the Safe Deposit and Trust Company of Baltimore receiver. On the 19th of October, 1916, the Court below, upon the application of the defendants, passed an order setting the case down for final hearing on the 28th of October, 1916. The defendants filed a motion to dissolve the injunction issued on the 1st day of November, 1915, and on the 21st day of October, 1916, the Court passed an order setting the motion for hearing on October 28th, 1916. On the 26th of October, 1916, the plaintiff filed a petition praying that the order of

Court making the administrators *pendente lite* parties defendant be rescinded and the Court passed an order setting that petition for hearing on the 28th of October, 1916.

The record discloses that on the 28th of October, 1916, the plaintiff entered an appeal from the order of September 6th, 1916, making the administrators *pendente lite* parties defendant, and from the order of October 21st, 1916, setting the motion to dissolve the injunction for hearing on the 28th of October, 1916. What further occurred on that day is set out in the following order of the Court below:

"This is an application on the part of the defendants herein for an order *nunc pro tunc,* as of October 28th, 1916, in order that the record may show in writing what the Court did and said orally at a hearing in said cause on said date, which is not in the record.

"The facts are substantially as follows: On October 28, 1916, a motion by the defendants to assign the case for final hearing; a motion by the defendants to dissolve the injunction; and a motion of the plaintiff to strike out the order of September 6, 1916, making Theodore W. Forbes and Osborne I Yellott, administrators *pendente lite,* parties defendant, were on the calendar, all having been regularly set for hearing on that date.

"After counsel announced themselves ready, a controversy arose about the order in which the motions should be taken up. The attorneys for the plaintiff insisting that the motion to strike out parties should be heard first, while the defendants' attorneys were equally insistent that the motion to dissolve should have precedence. An extended argument was made on this preliminary question and at its conclusion the court said: 'Gentlemen, from what I have heard of this case, and what I know of it, it seems to me, to be the duty of the court to do anything that will speedily get at the meat of the matter and dispose of the case. I do not think we should go by relays any more than we can possibly avoid. There is an injunction here against two parties; one of them, Mr. Valentine, the

other, Mr. Emory. The injunction was granted against
both. Since the injunction one of the parties died,
and certain other parties have been substituted for
him, the administrators *pendente lite*. The objection
is made that they are not the proper parties to repre-
sent anyone. While it may be true that Mr. Emory
is not properly represented, I am not prepared to
pass on that question. Surely, Mr. Valentine has a
right to come in and ask that the injunction be dis-
solved as against him; at any rate it can do no harm
to either of the parties to take up both questions and
argue them out this morning. The question, whether
or not the proper parties are here in this matter and
whether the injunction should be dissolved will be
heard now.'

"The next question was, who should open and who
close the discussion, as the plaintiff had the right to
open and close on the motion to strike out the parties,
and the defendants to open and close on the motion to
dissolve the injunction.

"After several propositions were made by counsel
for the defendants, plaintiff's counsel announced that
they would appeal from the order of September 6,
1916, making the administrators *pendente lite* parties
and also from the order of October 21, 1916, setting
the motion to dissolve the injunction for a hearing.
Counsel for the plaintiff then filed their order for an
appeal. Counsel for the defendants insisted that they
be permitted by the court to go on with the motion to
dissolve notwithstanding the appeal, and that as the
injunction was granted without bond that the plaintiff
be required to give an injunction bond, claiming that
they would not be protected by an appeal bond alone.
The application to proceed with the motion to dis-
solve, notwithstanding the appeal, the court denied,
as well as that to require an injunction bond; both
applications were oral and the decision of the court
was oral, it being at this time near the hour of ad-
journment and the office of the clerk being closed, it

was practically agreed that the appeal bond should not be filed until the 30th of October following. It will be noticed that the record up to the application for this *nunc pro tunc* order does not disclose even the fact that there was a hearing of any kind on October 28th. It merely shows that on that date an appeal was entered against the granting of the order of September 6th and October 21st, 1916.

"The application herein is to get in the record as of October 28th, what really took place, and we have endeavored from our recollection and the stenographer's notes to give it as nearly accurate as possible. If we are correct in the statement of the facts, then an oral application was made to hear the motion to dissolve, notwithstanding the order of appeal as well as an oral application to require the plaintiff to file an injunction bond, both of which applications were orally denied by the court. We can see no reason, therefore, for refusing the application to put in writing, and thus in the record, what did actually take place.

"It is, therefore, this 13th day of December, A. D. 1916, adjudged, ordered and decreed *nunc pro tunc* as of October 28th, 1916, by the Circuit Court for Baltimore County, in Equity, that the application for hearing on that date of the motion of the defendants to dissolve the injunction heretofore issued in this cause, notwithstanding the appeal, and their application for an injunction bond after the attorneys for the plaintiff filed an order for an appeal be and the same are hereby overruled and denied."

The two appeals we are now required to consider are by the administrators *pendente lite* and John R. Valentine from the last mentioned order. The appellee has filed a motion to dismiss the appeals, and we have referred to the record at some length to show the nature and effect of the order from which the appeals were taken.

It is not contended by the appellants that the order which they now ask to be reviewed is within the provisions of section 26 of Article 5 of the Code, authorizing an appeal from a final decree, or an order in the nature of a final decree, but they rely upon section 27 of Article 5 and section 200 of Article 16 of the Code. Section 27 of Article 5 authorizes an appeal from an order granting an injunction and from a refusal of the Court to dissolve an injunction, and section 200 of Article 16 provides that any party to a cause, or party in interest or party against whom a mandate or injunction may issue, as provided in section 199, "may move to have the same discharged or dissolved, and an appeal may be taken by any of such parties from the order granting such mandate or injunction, or the refusal to discharge or dissolve the same in such cases, and in such manner and on such terms as are now allowed in cases of injunction."

The theory of the appellants is that the refusal of the Court below to hear, on the 28th of October, 1916, their motion to dissolve the injunction granted on 1st of November, 1915, was in effect a refusal to dissolve the injunction, and they rely upon the case of *Conner* v. *Groth,* 90 Md. 674. An examination of that case, however, will show that it is not at all analogous to the one we are now considering. There the bill was filed by the appellees against the appellant to cancel and reform a written contract between the appellee and Ashby P. Conner for the purchase by the appellees of a hardware store and the good-will of the business, and also to restrain Conner and the People's National Bank of Hagerstown, to which he had assigned his interest in the contract, from the further prosecution of an action at law instituted by Conner for the use of the bank upon the same contract. The lower Court held that the plaintiffs were entitled to the relief prayed, and in its opinion said: "A decree can be framed directing the payment of the residue of the purchase money, less the proper amount to be credited to the plaintiffs as compensation for damages suffered from the

representations of the vendor." Thereupon a decree was passed referring the case to the auditor "to state an account of the indebtedness due from the plaintiffs to the defendants on the purchase of the stock of goods, in accordance with the opinion of the Court." Upon an appeal from that decree or order, JUDGE PEARCE said: "We will first dispose of the motion to dismiss the appeal, which is based upon the contention that it is merely an interlocutory order, and determines no question of right between the parties. We think it is clear, however, that the decree does determine that the contract did not truly set out the agreement between the parties, and that the plaintiffs were entitled to a credit of thirty-three and a third per cent. upon the inventoried value of the stock of goods, and were not bound by the contract to pay the specific sum named therein as the consideration. This was the essence of the question of right involved, and the reference to the auditor is merely to enable the Court to measure the credit to be allowed. Resort to the opinion is not necessary to sustain this conclusion. It is apparent upon the face of the decree, and in such case an appeal lies under Code, Art. 5, sec. 25.

"Moreover, while the decree does not in very terms continue the injunction which had been granted, the case was heard on motion to dissolve, and the purpose and the direct effect of the decree is to continue the injunction, and is in fact a refusal to dissolve. Certainly in the present status of this case the defendants can not prosecute the action at law. The only remedy open for the securing of that right, is the appeal which has been taken, and the Code expressly allows an appeal from an order granting an injunction, or refusing to dissolve one. The motion to dismiss must therefore be overruled."

It thus appears that in that case the lower Court determined the real question involved in favor of the plaintiffs, and, consequently, that they were entitled to a continuance of the injunction. and it was upon that ground that this

Court held that the order appealed from, the case having been heard on a motion to dissolve the injunction, was in effect a refusal to dissolve. In the present case the order from which the appeals were taken in terms overruled and · denied the application of the defendants for a *hearing, on the 28th of October,* 1916, of their motion to dissolve. Of course every delay in the hearing of a motion to dissolve an injunction operates to continue the injunction for the time being, but it is equally clear that every postponement of the hearing does not amount to such a *refusal to dissolve* as constitutes the basis of an appeal under the provisions of the Code referred to. *Owings* v. *Worthington,* 10 G. & J. 283.

Counsel for the appellants seem to concede that if the . order in question "related merely to the *time* at which the motion should be heard," that would be "a matter in the discretion" of the lower Court, "and not the subject of an appeal." But, notwithstanding the terms of the order, they insist that it was *an absolute refusal* to hear the motion at all, on the ground that the plaintiff had appealed from the order setting the motion to dissolve for hearing on the 28th of October, 1916. Assuming that to be the proper construction of the order from which these appeals were taken, the effect of the appeal and the filing of the appeal bond by the plaintiff was to stay the execution or operation of the order setting the motion to dissolve for hearing, unless the Court, in the exercise of the discretion given it by section 29 of Article 5 of the Code, decreed otherwise. *Barnum* v. *Barnum,* 42 Md. 251. To meet this difficulty in the way of maintaining their appeals, the appellants urge that no appeal lies from the order setting the motion to dissolve for hearing, and that it was accordingly the duty of the lower Court under section 29 to decree that the execution of that order should not be stayed by the plaintiff's appeal. The obvious answer to this suggestion is that it is "the province of the appellate Court to decide when an appeal lies, and not the Court from which the appeal is taken" (*Wylie* v. *Johnston,*

29 Md. 298; *Keighler* v. *Savage Mfg. Co.,* 12 Md. 383), and that the matter of staying the effect of an appeal under section 29 is entirely in the discretion of the lower Court and not a proper subject of review by this Court. *County Commissioners* v. *School Commissioners,* 77 Md. 283; *Crownfield* v. *Phillips,* 125 Md. 1. The case of *Emory* v. *Faith,* 113 Md. 253, does not sustain the appeals. It was there said: "It is not necessary at this late date to cite authorities in support of the well settled doctrine that an appeal will not lie from an order or decree passed in the exercise of an undoubted discretion of the lower Court. But the question whether the subject-matter of the order or decree was within the area of the discretion of the Court which passed it, is open to examination upon an appeal in the same case, for the Court can not improvidently extend the exercise of its discretion to matters which lie beyond its legitimate reach." The question whether in any particular case the execution of the order or decree appealed from shall be stayed by the appeal is expressly left by the Code entirely to the discretion of the lower Court, and we said in *Crownfield* v. *Phillips, supra*: "This Court has no power to review the refusal of the lower Court to annul the effect of the appeal, for it is a matter that is expressly left, by the statutes, to the discretion of the Court where the proceedings are pending."

It is not claimed that that part of the order in question which refused to require the plaintiff to give an injunction bond, is the subject of an appeal. *County Commissioners* v. *School Commissioners, supra.*

It follows from what has been said, that whether we treat the order appealed from in this case as merely a refusal to hear the motion to dissolve the injunction on the particular day named, or as a refusal to hear it at all pending the plaintiff's appeal, the present appeals are premature. That being so, we can not consider the merits of the case as presented by the bill, and the motion to dismiss must prevail.

*Appeals dismissed, with costs.*