WATERS ET UX., ETC. *v.* SMITH ET AL.

[No. 105, September Term, 1975.]

*Decided March 3, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Morton J. Owrutsky* and *Walter P. Drake*, with whom were *Perdue, Owrutsky & Whitehead, P.A.* on the brief, for appellants.

*John W. T. Webb*, with whom were *W. Newton Jackson, 3d* and *Webb, Burnett & Simpson* on the brief, for Smith and Womack, part of appellees. *John F. King*, with whom were *Anderson, Coe & King* on the brief, for Rimer and Johnson, other appellees.

SINGLEY, J., delivered the opinion of the Court.

This medical malpractice action on behalf of an incompetent was instituted on 24 February 1970 by Oscar and Edith Waters, the parents of Marion Bertha Long, the incompetent, who had qualified as her committee in January, 1969. Named as defendants were Stedman W. Smith, M.D., William S. Womack, M.D., B. A. Rimer, M.D., and Robert H. Johnson, Jr., M.D., who were associated with Peninsula General Hospital in Salisbury in 1960 at the time of the alleged malpractice. Following protracted pretrial discovery and numerous postponements, the case finally came to trial on 23 October 1973 before Judge John Grason Turnbull in the Circuit Court for Baltimore County.

As the trial proceeded, it became evident to the plaintiffs that they had presented a paucity of evidence on the issues of medical causation and the applicable standard of care, under the so-called "strict locality rule," [1] which counsel for the plaintiffs apparently believed to be applicable. For this reason, the plaintiffs served defendants, on the sixth day of trial, with additional supplemental answers to interrogatories, in which the plaintiffs announced their intention to call Marvin Cohen, M.D., who specialized in gynecology and obstetrics and was licensed in the State of Maryland, as an additional medical expert. The defendants objected strenuously to this eleventh-hour tactic on grounds of unfair surprise and prejudice. Counsel for the plaintiffs, attempting to justify the move, explained that, despite a "herculean effort," no physician practicing in Maryland willing to testify had been located previously because of a "conspiracy of silence" among members of the medical profession, but that Dr. Cohen ". . . [a]fter we told him what the hypothetical [question] would be, including some of the facts that first came out during this trial, . . . said he would come and testify."

Judge Turnbull was placed in a difficult position by the plaintiffs' announced intention of calling Dr. Cohen. On one hand, Judge Turnbull realized the dilemma faced by the plaintiffs with regard to obtaining local expert testimony. On the other, he recognized that the defendants might be severely prejudiced by Dr. Cohen's testimony because, in the midst of the trial, little opportunity could be afforded to depose him and to evaluate his expert opinion, even though the plaintiffs had suggested a continuance of a few days. Judge Turnbull was able to reach what then appeared to him to be an equitable solution to the problem:

> "In the interest of justice the court will permit Dr. Cohen to testify as a witness for the Plaintiffs only on the condition that there be a mistrial declared and the case continued for further assignment."

---

1. *See* Shilkret v. Annapolis Emergency Hosp., 276 Md. 187, 349 A. 2d 245 (1975).

The plaintiffs agreed to the mistrial, which was ordered by Judge Turnbull on 30 October 1973.

On 9 November 1973, the defendants deposed Dr. Cohen, at which time the following colloquy took place:

> "Q [by defendants' counsel] Were you aware, sir, [Dr. Cohen] that . . . you were going to be listed as an expert to be called by the Plaintiffs at that time [of the trial in October]?
>
> "A [by Dr. Cohen] No, sir.
>
> "Q As of that date, I am referring to October 30, 1973, had you made any commitment to the Plaintiffs in this case or to their counsel to appear as an expert on their behalf?
>
> "A No, sir. . . .
>
> "Q Well, so, is it fair to say, Doctor Cohen, that even as of this date, you are not, in terms of your preparation, at least, in a state that you would consider yourself willing to appear for the Plaintiffs as an expert in this case?
>
> "A I, I have already expressed to the counsels as of two days ago that I would not appear in this case."

Having thereby determined that as of 30 October 1973, Dr. Cohen had never agreed to testify on behalf of the plaintiffs, the defendants, on 26 November 1973, filed a "Motion To Dismiss, To Enter Default Judgment, And To Compel Plaintiffs to Pay Costs Under Maryland Rule 604 b." [2]

On 8 February 1974, Judge Turnbull held a hearing on the defendants' motion. The Judge refused to dismiss the case or to order a default; however, he did state that:

> "I don't find it necessary to find that he [counsel for

---

2. Maryland Rule 604 b reads:

"In an action or part of an action, if the court finds that any proceeding was had (1) in bad faith, (2) without substantial justification, or (3) for purposes of delay the court shall require the moving party to pay to the adverse party the amount of the costs thereof and the reasonable expenses incurred by the adverse party in opposing such proceeding, including reasonable attorneys' fees."

the plaintiffs] intentionally misled the Court. I do, however, find that, as a matter of fact, he misled the Court, under the language of Rule 604, Subsection b ... 'without substantial justification.' "

This finding, in Judge Turnbull's opinion, necessitated a ruling that the plaintiffs were required, under Rule 604 b, to pay the costs and expenses incurred by the defendants as a result of plaintiffs' counsel having misled the court because of the mandate of the Rule that "the court *shall* require the moving party to pay ... the costs ... and the reasonable expenses incurred . . . ." (emphasis supplied). Judge Turnbull then stated that he would refer the matter to the standing master for assessment of costs and expenses, and that:

". . . when all or any part of the Master's report becomes final, the Court will sign a final order requiring such reimbursements to be made to the Defendants as in the Court's judgment have been properly proven. The Court will include in that order, for your information, gentlemen, a further order that proceedings in this matter will be indefinitely stayed ... until payment in full of whatever costs the Court eventually awards against the Plaintiff herein."

Following denial of the plaintiffs' motion for rehearing on 9 May 1974, Judge Turnbull signed an "Order Of Stay And Reference," providing that "all further proceedings in this matter are stayed until *further order of the Court*," (emphasis supplied) except the hearing to be held before the master. It is from this order that the plaintiffs appealed to the Court of Special Appeals.

The Court of Special Appeals dismissed the appeal on the grounds that the appeal was neither from a final order, as required by Maryland Code (1974), Courts and Judicial Proceedings Article § 12-301, nor from an interlocutory order appealable under § 12-303 of the same article, *Waters v. Smith*, 27 Md. App. 642, 342 A. 2d 8 (1975). We granted certiorari.

The plaintiffs suggest that the case presents three questions for our consideration: [3]

> "1. Did the Trial Court err in staying proceedings in the instant case until costs have been paid under Maryland Rule 604 b?
>
> "2. Did the Trial Court err in holding that it had inherent Judicial Power to stay proceedings after a mistrial was declared?
>
> "3. Was the Order of the lower court appealable prior to trial on the merits?" [4]

We regard the third question as dispositive of the case at this juncture, and we shall hold that Judge Turnbull's order referring the matter to the standing master and staying further proceedings was neither a final order nor an appealable interlocutory order.

It is evident to us, as it was to the Court of Special Appeals, that the plaintiffs have incorrectly interpreted Judge Turnbull's order from which this appeal was taken. What the trial judge ordered was, indeed, a stay of all proceedings pending the report and recommendation of the master. This stay, however, was certainly not a final order, for Judge Turnbull succinctly stated:

> ". . . when all or any part of the Master's report becomes final, the Court *will sign a final order* . . . ." (emphasis supplied).

Thus, the stay by Judge Turnbull was nothing more than an order referring the matter to the master together with a statement of an intention to stay the proceedings following the master's report until the plaintiffs paid whatever costs were assessed. This Court has long held that expressions of intention by a trial judge are not final orders since they are

---

**3.** We note, as did the Court of Special Appeals, that the plaintiffs have not questioned the propriety of Judge Turnbull's ruling that he was required, under Rule 604 b, to order the plaintiffs to pay costs. That question was not before the Court of Special Appeals or before us.

**4.** These questions track the language contained in our order of 5 November 1975 granting certiorari.

always subject to change by the judge, *Hudson Bldg. Supply Co. v. Stulman*, 258 Md. 304, 265 A. 2d 925 (1970); *Hagthorp v. Hook*, 1 G. & J. 270 (1829). Furthermore, the stay in no way acted to "settle the rights of the parties or conclude the cause," *Brooks v. Ford Motor Credit Co.*, 261 Md. 278, 280, 274 A. 2d 345, 346 (1971), at least until such time as Judge Turnbull might order the plaintiffs to pay the costs and expenses which might be assessed. Because Judge Turnbull's stay was not a final order, it could not be appealed as such under Code (1974), Courts and Judicial Proceedings Article § 12-301.[5]

The plaintiffs, realizing that Judge Turnbull's stay until the proceedings before the master had been completed may not be a final order, argue, in the alternative, that the stay is appealable, even if interlocutory, on three grounds:

> "(a) Appellants were denied an absolute Constitutional right; (b) the Trial Court exceeded its jurisdiction; (c) the Trial Court abused its discretion so as to impair established rights."

In *Pearlman v. State*, 226 Md. 67, 71, 172 A. 2d 395, 397 (1961), Judge Hammond noted for the Court that:

> "Action of a trial court which denies an absolute constitutional right, although seemingly interlocutory, will be reviewed by this Court without requiring the complainant to proceed to final judgment. . . ."

We are aware that while § 12-303 of the Courts and Judicial Proceedings Article, entitled "Appeals from certain interlocutory orders," lists a number of interlocutory orders entered in civil cases which are immediately appealable, an interlocutory order of a trial court which purportedly denies a constitutional right is not listed among them.

---

5. Maryland Code (1974), Courts and Judicial Proceedings Article § 12-101 (f) contains a definition of "final judgment" in very general terms, and the Revisor's Note indicates that: "[t]his definition does not attempt to specify what is an appealable final order. That is left to case law, as at present."

Nevertheless, in *Smith v. Fredericktown Bank & Trust Co.*, 258 Md. 141, 142, 265 A. 2d 236, 237 (1970), we applied the principle, and accepted an appeal from an order denying the defendants their absolute right to the removal of a civil case granted by Maryland Constitution Art. IV, § 18A, because the order, although interlocutory, denied a constitutional right.

We need not, however, at this point, determine whether Judge Turnbull's stay denied the plaintiffs what they regard as their absolute constitutional right to a trial by jury. It is evident that such a denial could not have resulted from the actions of the trial court to date. Assuming, without deciding, that an unconstitutional deprivation of that right may result, it cannot occur until the plaintiffs show, after the entry of another stay order, that they are unable to pay whatever costs and expenses assessed by the master are ordered by the court to be paid. If the trial judge then stays or dismisses the case for failure to pay costs and expenses, it is possible that the plaintiffs could then raise the issue in an appeal from that order.

As previously stated, the plaintiffs advance a second theory why the stay ordered by Judge Turnbull is appealable even if found by us to be interlocutory. It is based on the premise that an appeal lies immediately from an order which exceeds the jurisdiction of the trial court. This premise is facially correct. *See Cohen v. Willett,* 269 Md. 194, 195, 304 A. 2d 824, 825 (1973); *Montgomery County v. Kaslow,* 235 Md. 45, 51, 200 A. 2d 184, 186 (1964); *Eastern States Corp. v. Eisler,* 181 Md. 526, 535, 30 A. 2d 867, 871 (1943). The rule, however, applies only "[w]here the issue on appeal is not the wisdom or correctness of an order, but rather whether the lower court had power to pass an order . . . ." *Cohen v. Willett, supra,* 269 Md. at 195. As a consequence, the plaintiffs cannot now challenge Judge Turnbull's decision to stay further proceedings pending receipt of the master's report and recommendation if Judge Turnbull had the power to order the stay.

We are of the opinion that the rule, as stated in *Cohen, Kaslow,* and *Eisler,* all *supra,* is not applicable to the present

case. It cannot be seriously contended that the action of Judge Turnbull in referring the matter of costs and expenses to a master under Rule 604 b was beyond the court's power. At best, this decision was only an exercise of judicial discretion, and Judge Turnbull, in reality, did nothing more than refer the matter to the master. Rule 604 b, being mandatory, required that costs and expenses be assessed. What the plaintiffs object to is Judge Turnbull's statement that he intended to stay the proceedings following receipt of the master's report and recommendation. This is no more than a statement of intention which may or may not be implemented. His "Order of Stay and Reference" of 9 May 1974 was simply a decision to consider the matter of costs and expenses pursuant to Rule 604 b prior to ordering another trial. Thus, the order had no practical effect other than to refer the matter to the master.

Plaintiffs have yet a third theory to support the appealability of the order of 9 May 1974. They argue that Judge Turnbull abused his discretion when he granted a stay pending receipt of the master's report and recommendation. There is no merit to this contention, for it as much as concedes that the judge had the necessary discretion to do what he did. An allegation of an abuse of discretion can in no way turn a non-appealable interlocutory order into an appealable one, *Middleton v. Morgan,* 263 Md. 154, 158-59, 282 A. 2d 94, 97 (1971); *Snyder v. Cearfoss,* 186 Md. 360, 366, 46 A. 2d 607, 610 (1946); *Lee v. State,* 161 Md. 430, 432-34, 157 A. 723, 724 (1931); *see also* Note, *Appealability of Denials of Motions to Implead and Related Discretionary Orders in Maryland,* 12 Md. L. Rev. 145 (1951). This is but another form of the rule previously stated that the wisdom of a trial court's order will not be reviewed interlocutorily even where immediate review of the trial court's power to issue the order may be available.

We conclude, therefore, that Judge Turnbull's order of 9 May 1974 was not a final order, and that this appeal, being from an interlocutory order, is not permitted by Code (1974), Courts and Judicial Proceedings Article § 12-303 nor by any of the plaintiffs' alternate grounds for review.

We are not to be understood as passing on the question whether an order by the trial court, following receipt of the report and recommendation of the master, that the plaintiffs pay the assessed costs and expenses would be immediately appealable as an order for the payment of money under § 12-303 (c) (5) of the Courts and Judicial Proceedings Article.

> *Order dismissing appeal affirmed; costs to be paid by appellants.*