FLOWER WORLD OF AMERICA, INC. *v.* JAMES
A. WHITTINGTON ET UX.

[No. 858, September Term, 1977.]

*Decided April 12, 1978.*

---

188

The cause was argued before GILBERT, C. J., and MASON and LISS, JJ.

*Gary I. Strausberg,* with whom were *Melnicove, Kaufman & Weiner* on the brief, for appellant.

*O. Daniel Kadan* for appellees.

GILBERT, C. J., delivered the opinion of the Court.

Md. Cts. & Jud. Proc. Code Ann. § 12-303 (1974), enumerates those instances when an appeal may be prosecuted notwithstanding the interlocutory nature of the order from which the appeal is entered. One of those exceptions to the general rule that no appeal lies save from a final judgment, Md. Cts. & Jud. Proc. Code Ann. § 12-301 (1974), is the "[g]ranting [of] a petition to stay arbitration. . . ." *Id.* at § 12-303 (c) (9) (Cum. Supp. 1977).

This appeal is concerned not with the granting of a stay, but the ordering of arbitration between Flower World of America, Inc., the appellant, and James A. and Iris R. Whittington, the appellees, with the conditional proviso "that the arbitration proceedings be held in the State of Maryland."

The appellees rely on *Maietta v. Greenfield,* 267 Md. 287, 293, 297 A. 2d 244, 247 (1972), to support their position that the order is interlocutory and, hence, not appealable, but for reasons known only to them, they did not move to dismiss the appeal either before the filing of the appellant's brief, Md. Rule 1036 a, or in the appellees' brief, Md. Rule 1036 d.[1] The *Maietta* case, written for the Court by Judge Singley, states "[a]lthough we have not had occasion to pass on the precise issue prior to this case . . . [an] order directing the parties to arbitrate pursuant to their own contract to do so is an interlocutory, nonappealable order." (Footnote omitted.) 267 Md. at 293, 297 A. 2d at 247.

If the order of the Circuit Court for Baltimore County had stopped with the command to arbitrate, the appellees' reliance on *Maietta, supra,* would be well taken. The difficulty is that the order went further and specified the situs of the arbitration. The question then is not the judicial fiat to arbitrate, but whether a court may designate the geographical location of arbitration, even though the contract between the parties leaves the site of the arbitration proceeding up to the parties or the arbitrators.

Before discussing the appealability *vel non* of the order in the case now before us, we shall state the factual predicate from which this controversy arose.

On January 27, 1976, the appellant, Flower World, entered into a licensing agreement with the Whittingtons. It was agreed that the Whittingtons were to have the use of the trade name, "Flower World," for a period of ten (10) years with the right to extend for another period of ten (10) years upon certain conditions not here pertinent. Flower World was to provide "assistance and advice, as requested by the" Whittingtons as to location and rental lease, as well as other services of an advisory nature including a complete training program at "Flower World's headquarters or other designated location." Additionally, "on the job training" was

---

1. We do not suggest that such a motion would have been successful. Indeed, for the reasons stated *infra,* it would not. We merely point out that if an appeal is improperly taken the better way of challenging it is by the use of Md. Rule 1036 c or 1036 d.

to be furnished to the Whittingtons for "a maximum of one (1) week" at Flower World's expense. In the event further training was desired by the Whittingtons, it was available to them for "a per diem charge."

The Whittingtons agreed to pay to Flower World the sum of one thousand dollars ($1,000) "to be expended for advertising and promotional activities in" the Whittingtons' "market area." Moreover, the Whittingtons were required to pay to Flower World "[a]s consideration for the continued right to operate under the license ... a sum of cash equal to three percent (3%) of the ... gross receipts during each calendar month and Two hundred fifty dollars ($250.00) per calendar month."

The licensing agreement also contained the following significant language in numbered paragraph 23C:

"Except as specifically otherwise provided in this Agreement, the parties hereto agree that any controversy, dispute or question arising out of, in connection with, or in relation to this Agreement or its interpretation, performance, or any breach thereof which cannot be settled amicably between the parties shall be determined solely and exclusively by arbitration under the Federal Arbitration Act, as amended, and in accordance with the then existing rules of the American Arbitration Association, and judgment upon any award, which may include an award of damages, may be entered by the highest State or Federal Court having jurisdiction. However, nothing contained herein shall in any way deprive ... [Flower World] of its right to obtain injunctive or other equitable relief. . . ."

One hundred twenty-nine (129) days later, the Whittingtons filed a declaration in the Circuit Court for Baltimore County against Flower World, a New Jersey corporation. The suit alleged that the Whittingtons had paid to Flower World the sum of seventy-five hundred dollars ($7,500) but Flower World had failed to provide "the schooling as promised, has not granted the franchise license as promised, has not

provided nor approved a site location as promised and does refuse to return the ... [Whittington's] $7500.00." It was further averred that the Whittingtons had "suffered great mental strain, worry and anguish," lost job opportunities and were otherwise injured to "$50,000.00 actual and compensatory damages and $50,000.00 punitive damages."

Flower World petitioned for arbitration, reciting the terms of the agreement of January 27, 1976. The Whittingtons opposed the arbitration and prayed a jury trial on the merits. The hearing judge granted the petition but placed a territorial limitation on the locale of that arbitration. The order read:

> "IT IS HEREBY ORDERED, this 26th day of July, 1977, by the Circuit Court for Baltimore County, that the above captioned Petition for Order to Arbitrate filed in the case be granted, PROVIDED that the arbitration proceedings be held in the State of Maryland."

In this Court the Whittingtons have "changed position as nimbly as if dancing a quadrille." [2] Despite their opposition in the circuit court to the Petition, they now exhort us to affirm the arbitration order, particularly, we infer, because the playing field belongs to the home team. Flower World, however, steadfastly of the belief that "something is amiss or out of place" [3] in the circuit court's order urges us to reverse that part of the order that spells out the restriction on where the arbitration is to be held.

The general rule is that an interlocutory order is not immediately appealable, but it may be reviewed on appeal from final judgment. *Gittings v. State ex rel. Ockerme,* 33 Md. 458 (1871). The reason for the rule is sound. It prevents repeated appeals and the protraction of litigation for indefinite periods. *Hillyard Constr. Co. v. Lynch,* 256 Md. 375, 260 A. 2d 316 (1970). Were the rule otherwise, the appellate courts would be inundated with all sorts of pretrial rulings to review, which might or might not affect the ultimate

---

2. Orloff v. Willoughby, 345 U. S. 83, 87, 73 S. Ct. 534, 537, 97 L. Ed. 842, 846 (1953).

3. Theodore Roethke (1908-1963), *The Bat* (1941).

outcome of the case. Trials might well be abruptly halted while an aggrieved party seeks redress at the appellate level, and litigants would be placed in the position of a battle of pocketbooks — who had the most money to spend on taking appeals and thus driving his opponent from the courts for want of funds to engage in such dilatory tactics.

The Legislature has seen fit to carve from the general rule of nonappealability of interlocutory orders certain specified types of orders which are immediately appealable. Md. Cts. & Jud. Proc. Code Ann. § 12-303 (Cum. Supp. 1977). The common denominator of the exceptions is the irreparable harm that may be done to one party if he had to await final judgment before entering an appeal. Reversal of the final order because of the time expenditure involved in trial and appeal might "rust the sharpest sword" [4] and "consume the strongest cord." [5]

In addition to those interlocutory orders which the General Assembly has deemed immediately appealable, the Court of Appeals has appended two (2) others.[6] They are: 1) a denial of a motion to dismiss on the basis of double jeopardy, *Neal v. State,* 272 Md. 323, 325-28, 322 A. 2d 887, 888-90 (1974); 2) an order which exceeds the jurisdiction of the trial court, *Waters v. Smith,* 277 Md. 189, 352 A. 2d 793 (1976), *aff'g,* 27 Md. App. 642, 342 A. 2d 8 (1975).

Patently, the instant case does not fall within the scope of *Neal* because it is not a criminal cause involving former jeopardy, nor does it bear any resemblance to double jeopardy's civil counterpart *res judicata.* If the appeal is to be considered, it must be on the ground that the hearing judge simply did not possess the authority to place the space limitation upon the arbitration. We need not and do not here decide whether any hearing judge may in any case impose such restrictions. Our holding is confined to the agreement to arbitrate as it appears in the record.

---

4. Sir Walter Scott (1771-1832), *Harold the Dauntless,* canto I, st. 4 (1817).
5. *Id.*
6. Md. Rule 605 a allows appeals under certain circumstances from "final" orders which dispose of less than the entire case, but inasmuch as the order is "final" it cannot be interlocutory. Thus, it is really not an exception to the general rule.

We observe that the paragraph of the agreement relative to the submission of disputes to arbitration provides "any controversy, dispute or question arising out of, in connection with, or in relation to ... [the] Agreement ... shall be determined solely and exclusively by arbitration under the Federal Arbitration Act, as amended, and in accordance with the then existing rules of the American Arbitration Association...."

The Federal Arbitration Act "is based upon and confined to the uncontestable federal foundations of 'control over interstate commerce.'" *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U. S. 395, 405, 87 S. Ct. 1801, 1806, 18 L.Ed.2d 1270, 1278 (1967).

The federal act, 9 U.S.C. § 2 (1970) provides:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Since the parties' agreement provided that the arbitration would be determined by the federal act in accordance with the "then existing rules" [7] of the American Arbitration Association, those rules must be read in conjunction with the federal statute. Section 10 of the arbiters' association rules provides:

"FIXING OF LOCALE — The parties may mutually agree on the locale where the arbitration is to be held. If the locale is not designated within seven days from the date of filing the Demand or

---

7. We interpret the phrase "then existing rules" to mean the operative rules at the time of the referral to arbitration.

Submission the AAA shall have power to determine locale. Its decision shall be final and binding. If any party requests that the hearing be held in a specific locale and the other party files no objection thereto within seven days after notice of the request, the locale shall be the one requested."[8]

When the federal arbitration statute is read along with the AAA rules, it is crystal clear that the parties in the instant case may mutually agree on the situs of the arbitration, or either of them may request a specific location to which the other party may interpose objection. The absence of an objection, we deduce, is tantamount to consent. Should the parties not agree, the AAA is empowered to designate the site of the arbitration. That decision is final and binding. The determination by the AAA, as to locale, is, however, subject to limited inquiry as to whether it "[was] made in accordance with a minimum standard of fair dealing." *Aerojet-General Corp. v. American Arbitration Ass'n.,* 478 F. 2d 248, 251 (9th Cir. 1973). " 'Finality' is a mirage if relied upon to preclude *any* judicial review of an arbitration award," *Brotherhood of R.R. Trainmen v. Central Ga. Ry. Co.,* 415 F. 2d 403, 412-13 (5th Cir. 1969), to which we append, "including the selection of the situs of the arbitration." Although section 20 of the Commercial Arbitration Rules of AAA provides that "[t]he arbitrator shall fix the time and place for each hearing,"[9] the section does not conflict with section 10. Section 20 is directed solely to the time and place within the selected situs.

A case bearing a slight semblance of similarity to that *sub judice* was decided by the United States District Court for the Southern District of New York. There, the Court said in *Network Cinema Corp. v. Glassburn,* 357 F. Supp. 169 (S.D.N.Y. 1973), that it had the power to stay an action pending in a Kansas State court after the latter had held, "the said arbitration clause is not enforceable in Kansas and plaintiff is not required to arbitrate this dispute in New York

8. George Goldberg, *A Lawyer's Guide to Commercial Arbitration,* Appendix A, pg. 130 (1977).
9. *Id.*

. . .", *Id.* at 171-72, notwithstanding the application of the federal arbitration statute to the matter. Manifestly, the federal district court believed that the Kansas court's order was an infringement on the commerce clause of the Constitution [10] and, hence, invalid.

Under the Federal Arbitration Act, courts are limited to "ascertaining whether the party seeking arbitration is making a claim which on its face is one governed by the agreement." *International Tel. & Tel. Corp. v. Local 400,* 286 F. 2d 329, 330-31 (3rd Cir. 1960); *Galt v. Libbey-Owens-Ford Glass Co.,* 376 F. 2d 711 (7th Cir. 1967). Once that issue is decided in the affirmative and the order to submit to arbitration is passed, Md. Cts. & Jud. Proc. Code Ann. § 3-207 (c) (1974), the hearing judge's role ceases. He possesses neither the express nor implied power to impose conditions which conflict with the federal act. He is not at liberty to designate the locale where the arbitration is to occur. The hearing judge, in the case now before us, was devoid of jurisdiction to specify the geographical confines in which the arbitration was to be held. His order that the arbitration must be conducted in Maryland is a nullity. Such an order is an unwarranted judicial intrusion into the contractual arrangement of the parties. The court was not free to rewrite the arbitration clause of the contract so as to conform to what the court believed should have been written initially.

We have previously noted that an immediate appeal lies "from an order which exceeds the jurisdiction of the trial court." *Waters v. Smith,* 277 Md. at 196, 352 A. 2d at 797. *See Cohen v. Willett,* 269 Md. 194, 195, 304 A. 2d 824, 825 (1973); *Montgomery County v. Kaslow,* 235 Md. 45, 51, 200 A. 2d 184, 186 (1964). "[A] court cannot improvidently extend the exercise of its discretion to matters which lie beyond its legitimate reach." *Eastern States Corp. v. Eisler,* 181 Md. 526, 535, 30 A. 2d 867, 871 (1943); *Forbes v. Warfield,* 130 Md. 397, 407, 100 A. 630, 634 (1917); *Beilman v. Poe,* 120 Md. 444, 446, 88 A. 131 (1913); *Emory v. Faith,* 113 Md. 253, 257, 77 A. 386, 387 (1910). "A court does not have the power, by judicial fiat,

---

10. U. S. Const. art. I, § 8 [Powers of Congress].

to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators." *Stoll v. Gottlieb,* 305 U. S. 165, 171, 59 S. Ct. 134, 137, 83 L. Ed. 104, 108 (1938).

The appeal is properly before us.

We affirm that portion of the order that compels the submission to arbitration of the dispute between the parties. The conditional provision of the order that commands the arbitration to be held in Maryland is reversed and remanded to the circuit court with instruction to strike that clause from the order.

> *Order affirmed in part and reversed in part.*
> *Case remanded to the circuit court for compliance herewith.*
> *Costs to be paid by appellees.*