917 A.2d 1200

**Elton ADDISON**

v.

**STATE of Maryland.**

**No. 144, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

March 8, 2007.

140

Kevin M. Murphy, Washington, DC, for appellant.

Edward J. Kelley (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel KRAUSER, MEREDITH, MOYLAN, CHARLES E., JR. (Retired, specially assigned), JJ.

MEREDITH, J.

Elton Addison appeals the pretrial order of the Circuit Court for Montgomery County that denied his motion for an *ex parte* hearing regarding his proposed pretrial use and disclosure of confidential records that he had previously subpoenaed and reviewed in the court's chambers. The State has moved to dismiss the appeal, arguing that the ruling denying the *ex parte* hearing is not immediately appealable. For the reasons set forth below, we conclude that the ruling is not immediately reviewable under the collateral order doctrine, and we grant the motion to dismiss this interlocutory appeal. We do not reach the merits of Addison's question as to

whether the motion court had the authority to grant Addison's request for an *ex parte* hearing regarding his proposed pre-trial use of the confidential records.

### Facts and Procedural History

A Montgomery County grand jury indicted Elton Addison on one count of sexual abuse of a minor and six counts of sexual offense in the third degree. Addison filed two separate motions for subpoenas for documents to be produced before trial, requesting that the Montgomery County Public Schools ("MCPS") and the Montgomery County Department of Health and Human Services ("DHHS") be compelled to provide the alleged victim's educational records and health records. The MCPS and the DHHS both opposed the defendant's motions for subpoenas. Both argued that these governmental agencies should not be required to disclose their respective records, citing the alleged victim's privacy rights and the confidentiality of the documents.

On June 29, 2005, attorneys for the defendant, the State, and MCPS appeared for a hearing in the Circuit Court for Montgomery County. At that hearing, Addison's counsel clarified the limited access she was seeking at that juncture, stating:

> [Defense Counsel]: I'm asking to be able to look at [the records of the alleged victim]. All that I'm asking to do is to inspect them. If there is anything in there that is relevant or that I'm going to use in any way, I will ask the Court's permission. The confidentiality will be maintained. I will not even discuss what's in the records with my client without the Court's permission. If there is some aspect of the records that I think will be relevant in this case or that I could gain useful information from, we will have a hearing before the Court, and the Court will decide whether I can use that or not, whether I can reveal it further.
>
> *     *     *
>
> THE COURT: [*addressing counsel for MCPS*] [D]id you have a proposed order on this matter?

[Counsel for MCPS]: Yes, Your Honor. Since [defense counsel] and I have argued this issue many times, there is an order that [defense counsel] has seen before, ... which does recite what [defense counsel] represented to the Court, that the inspection would be permitted by counsel. They then could tab something that they believe is important, and it would all be subject to further hearing before the Court as to whether they can make copies, whether they could use any of that information at trial. So this is ... kind of a standard order that has been used in the past when the Court has deemed it appropriate for there to be a review.

The order that was then entered by the circuit court with respect to the records of MCPS following the June 29, 2005, hearing, provided, in accordance with *Zaal v. State,* 326 Md. 54, 84–88, 602 A.2d 1247 (1992):

ORDERED, that the records shall be delivered to the chambers of [the motion judge] and that counsel for the parties are permitted to review the records in question in their capacity as officers of the Court; and it is further,

\*     \*     \*

ORDERED, that should counsel for either the State or the Defendant desire to use the records in question or any information contained therein, they shall seek Court approval on such use; and it is further,

ORDERED, that the use of the records in question is subject to further hearing and decision of this Court, which shall also address the scope of the use and disclosure of the records or information contained therein, restrictions on copying and disclosure, and the imposition of any further orders as may be appropriate.

Subsequently, the circuit court also entered an order permitting inspection of the records of DHHS but prohibiting disclosure pending further order of court. *Cf. Baltimore City Police Department v. State,* 158 Md.App. 274, 288–91, 857 A.2d 148 (2004)(describing process for *in camera* inspection of confidential records, followed by opportunity to proffer need for disclosure). The records of both MCPS and DHHS were

delivered to the court's chambers, and counsel for both Addison and the State reviewed the records in chambers.

After reviewing the records in chambers, Addison's counsel moved to be heard *ex parte* with respect to her proffers of justification for making use of certain of the records to prepare for trial. Counsel argued that such proffers would require the disclosure of her defense strategy and her work product, and, therefore, should not be shared with the prosecution. Counsel further argued that requiring her to disclose her proposed uses of the records and argue in the presence of the prosecutors why she should be permitted to make further pretrial use and/or disclosure of the MCPS and DHHS records would violate Addison's right to due process, his right against self-incrimination, and his right to effective assistance of counsel.

At the hearing on the motion to present the proffers *ex parte,* counsel for Addison clarified that the requested *"ex parte"* hearing would not exclude attorneys who represent the custodians of the records, but would exclude the prosecutors, and would be a closed proceeding. Counsel stated:

> [Defense counsel]: ... The hearing would be ex parte, but those two entities [*i.e.,* MCPS and DHHS,] are still charged with maintaining the confidentiality of their records. So I think that they would be able to argue to the Court, if the Court accepted that[ ] I would be able to use certain of the records, perhaps the scope or what I could do with the records. I think that at the end of the ex parte hearing, the Court could, of course, and I would ask this, that the Court seal the record so that those attorneys would ... be prevented from discussing with anyone what we talked about at the ex parte hearing.

The prosecutor objected to the proposed procedure, and asserted that the State was entitled to be present at any such hearing.

The circuit court denied the request for an *ex parte* hearing regarding Addison's proposed use of the MCPS and DHHS records, stating:

THE COURT: I have reviewed the memorandum and I've listened to the arguments of counsel. It is a novel and interesting argument.... But as [defense counsel] concedes, there's no Maryland case law on it.... So it would be most unusual to exclude the State from a hearing of this nature, and I don't feel that authority exists to do so.... I'm going to deny the motion to conduct a hearing as an ex parte hearing.

Addison then filed this interlocutory appeal to challenge that denial, and the circuit court stayed the criminal action pending resolution of this appeal.

## Discussion

### 1. *Ex parte* **Hearings**

■ The motion court was understandably skeptical about Addison's proposed procedure for conducting an *ex parte* hearing on a pretrial issue. In our adversarial system of justice, *ex parte* communications between the court and one party to a dispute are generally disfavored and, in most instances, prohibited. Limited exceptions to the general rule that "a judge shall n[ot] initiate, permit, or consider *ex parte* communications" are set forth in The Maryland Code of Judicial Conduct in Maryland Rule 16–813, Canon 3B(6), which provides:

(a) A judge shall accord to every person who has a legal interest in a proceeding pending before the judge, or that person's lawyer, the right to be heard according to law.

(b) While presiding over a proceeding, a judge shall neither initiate, permit, or consider *ex parte* communications nor consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding, except as otherwise provided in Canon 3B (6).

(c) *Ex parte* communications that relate to scheduling or other administrative purposes or emergencies and not to substantive matters or issues on the merits are authorized, if: (i) circumstances require; (ii) the judge reasonably be-

**146**

lieves that no party will gain a procedural or tactical advantage as a result of the communication; (iii) the judge makes provision promptly to notify all other parties as to the substance of the *ex parte* communication; and (iv) the judge affords the parties reasonable opportunity to respond.

(d) With the consent of the parties, a judge may confer separately with the parties and their lawyers in an effort to mediate or settle matters pending before the judge.

(e) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding if the judge: (i) makes provision promptly to notify all of the parties as to the expert consulted and the substance of the advice; and (ii) affords the parties reasonable opportunity to respond.

(f) A judge may consult with court personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities and with other judges.

(g) A judge may initiate or consider an *ex parte* communication when expressly authorized by law to do so.

The proposed draft of the American Bar Association's Revised Model Code of Judicial Conduct retains a similar prohibition against substantive *ex parte* communications except when "expressly authorized by law." *See November 2006 Report of the ABA Joint Commission To Evaluate The Model Code of Judicial Conduct,* Rule 2.9.[1]

---

1. The full text of the proposed revised Rule 2.9 is as follows:
   **RULE 2.9**
   *Ex Parte Communications*
   (A) A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter, except as follows:
   (1) When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:
   (a) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication; and
   (b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.

Maryland Rule 1–351 similarly sets forth a general prohibition against granting *ex parte* applications for relief, stating:

No court shall sign any order or grant any relief in an action upon an *ex parte* application unless:

(a) an *ex parte* application is expressly provided for or necessarily implied by these rules or other law, or

the moving party has certified in writing that all parties who will be affected have been given notice of the time and place of presentation of the application to the court or that specified efforts commensurate with the circumstances have been made to give notice.

The Maryland Lawyers' Rules of Professional Conduct likewise impose an obligation upon attorneys to refrain from engaging in *ex parte* communications. In Maryland Rule 16–812, Maryland Rule of Professional Conduct 3.5(a)(7) provides:

(2) A judge may obtain the written advice of a disinterested expert on the law applicable to a proceeding before the judge, if the judge gives advance notice to the parties of the person to be consulted and the subject matter of the advice to be solicited, and affords the parties a reasonable opportunity to object and respond to the notice and to the advice received.

(3) A judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, or with other judges, provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record, and does not abrogate the responsibility personally to decide the matter.

(4) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to settle matters pending before the judge.

(5) A judge may initiate, permit, or consider an ex parte communication when expressly authorized by law to do so.

(B) If a judge inadvertently receives an unauthorized ex parte communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond.

(C) A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed.

(D) A judge shall make reasonable efforts, including providing appropriate supervision, to ensure that this Rule is not violated by court staff, court officials, and others subject to the judge's direction and control.

"A lawyer shall not ... communicate *ex parte* about an adversary proceeding with the judge or other official before whom the proceeding is pending, except as permitted by law."

When Addison made his motion for an *ex parte* hearing, the motion court was not persuaded by Addison's arguments that such a hearing was, in the words of Judicial Canon 3B(6)(g), "expressly authorized by law." Addison cited no Maryland case on point, but directed the court's attention to a substantial number of cases from other states that have held, in the wake of *Ake v. Oklahoma*, 470 U.S. 68, 82–83, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), that a court may conduct an *ex parte* hearing to consider the request of a defendant who seeks funding for pretrial access to a psychiatric expert. Subsequent to the circuit court's ruling in Addison's case, the Maryland Court of Appeals has also addressed *Ake*, and has held that an indigent defendant seeking pretrial funding to engage a DNA expert is entitled to present the reasons supporting the request at an *ex parte* hearing. *Moore v. State*, 390 Md. 343, 370–72, 889 A.2d 325 (2005), *cert. denied*, —— U.S. ——, 127 S.Ct. 59, 166 L.Ed.2d 22 (2006).

*Ake* did not actually involve a dispute regarding the defendant's entitlement to be heard *ex parte*. Rather, the issue in *Ake* was whether the indigent defendant in that capital case should have been provided the services of a court-appointed psychiatrist. The Supreme Court held there is a right to such services, stating: "We hold that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." 470 U.S. at 74, 105 S.Ct. 1087. In *dicta*, the Court added a reference to "an *ex parte* threshold showing," commenting: "When the defendant is able to make an ex parte threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent." *Id.* at 82–83, 105 S.Ct. 1087.

When other courts later addressed the right of an indigent defendant to seek state funding under circumstances similar to those in *Ake,* the courts in many states either authorized or required that the hearing on such requests be conducted *ex parte* in order to avoid placing the defendant in a position of having to disclose defense theories and work product. By the time the Maryland Court of Appeals spoke on the subject, in *Moore,* numerous other states had already issued rulings that authorized or required *ex parte* hearings to consider a defendant's requests for state funding. The Court of Appeals summarized its survey of other states' positions on the subject as follows, 390 Md. at 370–71, 889 A.2d 325:

Courts have split as to the necessity of *ex parte* hearings. Several states have statutes requiring an *ex parte* hearing when an indigent defendant requests appointment of an expert. *See, e.g.,* Minn.Stat. § 611.21 (2003); S.C. Stat. § 16–3–26(c) (2003); Tenn.Code Ann. § 40–14–207(b) (2003); Nev.Rev.Stat. Ann. § 7.135 (Michie 1998); N.Y. County Law § 722–c (Consol.1977).

The courts in Alabama, Arkansas, Florida, Georgia, Hawaii, Indiana, Michigan, Oklahoma, Tennessee, Texas, and Washington have held that an *ex parte* hearing is required. *See Ex parte Moody,* 684 So.2d 114, 120 (Ala.1996); *Wall v. State,* 289 Ark. 570, 715 S.W.2d 208, 209 (1986); *Brooks v. State,* 259 Ga. 562, 385 S.E.2d 81, 83–84 (1989), *cert. denied,* 494 U.S. 1018, 110 S.Ct. 1323, 108 L.Ed.2d 498 (1990); *Arnold v. Higa,* 61 Haw. 203, 600 P.2d 1383, 1385 (1979); *Stanger v. State,* 545 N.E.2d 1105, 1115 (Ind.App.1989); *People v. Loyer,* 169 Mich.App. 105, 425 N.W.2d 714, 722 (1988); *McGregor v. State,* 733 P.2d 416, 416–17 (Okla.Crim. App.1987); *Barnett,* 909 S.W.2d at 428; *Williams v. State,* 958 S.W.2d 186, 192–94 (Tex.Crim.App.1997); *State v. Newcomer,* 48 Wash.App. 83, 737 P.2d 1285, 1291 (1987).

The courts in Arizona, South Dakota, and Virginia have held that whether to hold an *ex parte* hearing is within the trial court's discretion. *See State v. Apelt,* 176 Ariz. 349, 861 P.2d 634, 650 (1993); *State v. Floody,* 481 N.W.2d 242, 254–56 (S.D.1992); *Ramdass v. Commonwealth,* 246 Va.

413, 437 S.E.2d 566, 571 (1993), *vacated on other grounds,* 512 U.S. 1217, 114 S.Ct. 2701, 129 L.Ed.2d 830 (1994). Louisiana requires an indigent defendant to show that he or she would be prejudiced if the hearing was not held *ex parte. State v. Touchet,* 642 So.2d 1213, 1220 (La.1994). The North Carolina Supreme Court has held that an *ex parte* hearing is required when the request is for a psychiatrist, *State v. Ballard,* 333 N.C. 515, 428 S.E.2d 178, 180 (1993), but not required when the request is for a non-psychiatric expert. *State v. Phipps,* 331 N.C. 427, 418 S.E.2d 178, 190–91 (1992).

*See also Kimberly J. Winbush, Right of Indigent Defendant in State Criminal Prosecution to* Ex Parte In *Camera Hearing on Request for State–Funded Expert Witness,* 83 A.L.R.5th 541 (2000).

The Court of Appeals concluded in *Moore* that an *ex parte* hearing to consider the indigent defendant's request is not only authorized, but is required in Maryland. The Court explained, 390 Md. at 371–72, 889 A.2d 325:

We believe the better view is that an *ex parte* hearing, when timely requested, is required. *See generally* Justin B. Shane, *Money Talks: An Indigent Defendant's Right to an* Ex Parte *Hearing for Expert Funding,* 17 Cap. Def. J. 347 (2005); Giannelli, *supra,* at 1403–04. Indigent defendants seeking state funded experts should not be required to disclose to the State the theory of the defense when non-indigent defendants are not required to do so. *See, e.g., Barnett,* 909 S.W.2d at 428 (holding that "[i]ndigent defendants who must seek state-funding to hire a[n] ... expert should not be required to reveal their theory of defense when their more affluent counterparts, with funds to hire experts, are not required to reveal their theory of defense.")

In *Moody,* the Alabama Supreme Court discussed this issue as follows:

"Requiring an indigent defendant to prematurely disclose evidence in a hearing where the state is present encroaches on the privilege against self-incrimination, which ap-

plies at all stages of a criminal proceeding. The privilege against self-incrimination 'does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution.' " *Maness v. Meyers,* 419 U.S. 449, 461, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975).

["]There should be equality between 'indigents and those who possess the means to protect their rights.' *United States v. Tate,* 419 F.2d 131 (6th Cir.1969). An indigent defendant should not have to disclose to the state information that a financially secure defendant would not have to disclose."

*Moody,* 684 So.2d at 120. We agree.

There are several factors that distinguish *Moore* from Addison's case. Perhaps most significant is the Court's focus on assuring that indigent defendants did not have to disclose their trial strategy in order to obtain state funding for the same sort of expert assistance a non-indigent defendant could obtain confidentially. Addison makes no claim that indigent defendants would have less access than non-indigent defendants have to the records of MCPS and DHHS if their arguments are not heard *ex parte.*

In the expert funding cases, no privacy rights of third parties are implicated. *Cf. Zaal, supra,* 326 Md. at 83, 602 A.2d 1247 ("Juxtaposed against petitioner's proffer is the victim's legitimate interest in the privacy of the contents of her educational records."). Even though Addison did not seek to exclude the custodians of the records from the *"ex parte* hearing," those custodians may not be familiar with the allegations of the case and may not be in a position to discern potential dangers posed by some disclosures.

Appellant cited no case that authorized *ex parte* hearings regarding a defendant's proposed pretrial use of records. To the contrary, all cases cited by appellant as authority for him

to be heard *ex parte* have dealt with indigent defendants seeking funding. Nevertheless, Addison urges us to expand upon the holding in *Moore* and rule that a defendant who is seeking access to something that would be of assistance in preparing a defense that is only obtainable upon court order is entitled to argue his request outside the presence of the prosecutor.

The issue presented by Addison turns upon the authority of the trial court, rather than the specific facts of his case. But the denial of his request to be heard *ex parte* is nevertheless an interlocutory ruling that does not fall within the collateral order doctrine. Accordingly, we are unable to address the merits of the question raised on appeal.

## 2. Interlocutory appeal

Pursuant to § 12–301 of Md.Code (1974, 2002 Repl. Vol.), Courts and Judicial Proceedings Article ("CJ"), "a party may appeal from a final judgment entered in a civil or criminal case by a circuit court." Section 12–101(f) defines "final judgment" as "a judgment ... or other action by a court ..., from which an appeal, application for leave to appeal, or petition for certiorari may be taken." As the Court of Appeals stated in *Jackson v. State,* 358 Md. 259, 266, 747 A.2d 1199 (2000), "it is well settled that, to be appealable, an order or judgment ordinarily must be final."

A "final judgment" from which a party may appeal is "one which settles the rights of the parties or concludes the cause ... and has been entered on the docket." *Mitchell Properties v. Real Estate Title,* 62 Md.App. 473, 482, 490 A.2d 271 (1985) (internal quotes and citations omitted). A judgment must possess three qualities in order to qualify as a final, appealable judgment:

"If a ruling of the court is to constitute a final judgment, it must have at least three attributes: (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md. Rule 2–602(b), it must adjudicate or complete the

adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with Md. Rule 2–601."

*Board of Liquor v. Fells Point Cafe,* 344 Md. 120, 129, 685 A.2d 772 (1996) (reconsideration denied) (quoting *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767 (1989)). The court's ruling on Addison's request to be heard ex parte was not a final judgment.

■ Under Maryland law there are only three limited exceptions to the final judgment rule. In *Salvagno v. Frew,* 388 Md. 605, 615, 881 A.2d 660 (2005), Judge Wilner, writing for the Court of Appeals, explained:

> [W]e have made clear that the right to seek appellate review of a trial court's ruling ordinarily must await the entry of a final judgment that disposes of all claims against all parties, and that there are only three exceptions to that final judgment requirement: appeals from interlocutory orders specifically allowed by statute; immediate appeals permitted under Maryland Rule 2–602; and appeals from interlocutory rulings allowed under the common law collateral order doctrine.

*Accord St. Joseph Medical Center, Inc. v. Cardiac Surgery Associates, P.A.,* 392 Md. 75, 84, 896 A.2d 304 (2006).

■ In the instant case, an interlocutory appeal to determine whether the circuit court erred in denying Addison' s request for an *ex parte* hearing is not specifically allowed by statute, *see* CJ § 12–303, or permitted under Rule 2–602. Such an interlocutory appeal would, therefore, only be permitted if allowed under the common law collateral order doctrine.

■ The collateral order doctrine, recognized by the Supreme Court in *Cohen v. Beneficial Industrial Loan Corporation,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), permits the prosecution of an appeal from a "narrow class of orders, referred to as collateral orders, which are offshoots of the principal litigation in which they are issued and which are immediately appealable as 'final judgments' without regard to the posture of the case." *Harris v. David S. Harris, P.A.,* 310

Md. 310, 315, 529 A.2d 356 (1987). *See In re Franklin P.,* 366 Md. 306, 326, 783 A.2d 673 (2001). For a non-final judgment to be appealable under this narrow collateral order exception, each of the following four elements must be satisfied:

(1) it must conclusively determine the disputed question;

(2) it must resolve an important issue;

(3) it must be completely separate from the merits of the action; and

(4) it must be effectively unreviewable on appeal from a final judgment.

*County Com'rs for St. Mary's County v. Lacer,* 393 Md. 415, 428, 903 A.2d 378 (2006). *Accord Baltimore City Department of Social Services v. Stein,* 328 Md. 1, 10–11, 612 A.2d 880 (1992). In Maryland, "the four requirements of the collateral order doctrine are very strictly applied, and appeals under the doctrine may be entertained only in extraordinary circumstances." *Lacer,* 393 Md. at 428, 903 A.2d 378 (quoting *In re Foley,* 373 Md. 627, 634, 820 A.2d 587 (2003)). *Accord St. Joseph, supra,* 392 Md. at 86, 896 A.2d 304.

In *St. Joseph, supra,* the Court of Appeals distilled the limited scope of the collateral order doctrine to "one very unusual situation" that "involves trial court orders permitting the depositions of high level governmental decision makers" under certain circumstances. 392 Md. at 87–88, 896 A.2d 304. More recently, applying the collateral order doctrine exception with only a slight variation, the Court of Appeals held in *Ehrlich v. Grove,* 396 Md. 550, 571, 914 A.2d 783 (2007), that the doctrine permitted the Governor of Maryland to note an interlocutory appeal of discovery orders "so as to avoid a constitutional collision between the Executive Branch and the Judicial Branch." The Court held that "an interlocutory appeal is appropriate under these extraordinary circumstances involving discovery orders directed to a high government official." *Id.* at 572, 914 A.2d 783.

The Court also noted in *St. Joseph* that, apart from the collateral order doctrine, a non-party might be able to pursue an interlocutory appeal from a discovery ruling that was final

as to that non-party. *Id.* at 88–90, 896 A.2d 304 (citing *Department of Social Services v. Stein, supra,* 328 Md. 1, 612 A.2d 880). The Court explained:

> St. Joseph is not a party to the unfair competition case and would have no standing to challenge the discovery order by appealing from a final judgment in that case. . . . Analytically, and under our cases, the order was final as to St. Joseph and was appealable by St. Joseph as a final judgment. Under the circumstances here, and unlike the law in some other jurisdictions, Maryland law does not require a person or entity in St. Joseph position to refuse compliance with the court's order, and be held in contempt, in order to challenge on appeal the adverse order.
>
>          \*      \*      \*
>
> In situations where the aggrieved appellant, challenging a trial court discovery or similar order, is not a party to the underlying litigation in the trial court, or where there is no underlying action in the trial court but may be an underlying administrative or investigatory proceeding, Maryland law permits the aggrieved appellant to appeal the order because, analytically, it is a final judgment with respect to that appellant.

None of these extraordinary circumstances is present in Addison's case. Consequently, the interlocutory ruling is not immediately reviewable.

Addison argues that the denial of his request to be heard *ex parte* does satisfy the four requirements of the collateral order doctrine. He contends it conclusively determined the question for the purposes of his case, and, if unaltered on appeal, it resolved an important issue. He argues the question of whether the circuit court has authority to conduct an *ex parte* pretrial hearing regarding the pretrial use of confidential records is clearly distinct from the merits of the case. And he asserts the issue of whether there is authority for an *ex parte* hearing cannot be effectively reviewed following a final judgment on the merits of the case.

Addison's argument focuses on the word "effectively." Even though the claimed error *could* be raised on appeal from

a final judgment, *cf. Goldsmith v. State,* 337 Md. 112, 651 A.2d 866 (1995)(denial of pretrial request for access to psychotherapy records reviewed on appeal after conviction), Addison argues that whatever advantage he enjoys by keeping his plans for the use of such information confidential from the prosecutor cannot possibly be restored by a post-conviction ruling that his pretrial assertion of a right to be heard *ex parte* was correct. Once the defendant's theories are disclosed to the State, during pretrial hearings or at trial itself, he argues, any tactical advantage of surprise cannot be "effectively" restored.

But a similar argument could be made with respect to many discovery disputes. And the Court of Appeals has been unswerving in its position that discovery rulings (at least those which affect only the parties to the action and do not compel discovery from a high government official) may not be appealed in advance of the entry of a final judgment. *See, e.g., St. Joseph, supra,* 392 Md. at 85, 896 A.2d 304 ("If this discovery dispute were only between parties to the underlying unfair competition action, we would agree with [the appellee] that no party to that action could take an immediate appeal from the discovery order."). In *St. Joseph,* the Court explained, *id.* at 87, 896 A.2d 304:

> Most discovery orders do not comply with the third requirement of the collateral order doctrine, as they generally are not completely separate from the merits of the lawsuit. Instead, "a typical discovery order [is] aimed at ascertaining critical facts upon which the outcome of the ... controversy might depend." *In re Foley, supra,* 373 Md. at 635, 820 A.2d at 587. In addition, discovery orders fail to meet the collateral order doctrine's fourth element, as they are effectively reviewable on appeal from a final judgment. *In re Foley, ibid.* A party aggrieved by a discovery order and aggrieved by the final judgment may challenge the discovery ruling on appeal from the final judgment. Furthermore, discovery orders rarely involve an "extraordinary situation" which is part of the collateral order doctrine's fourth element. *Foley,* 373 Md. at 636, 820 A.2d at 593.

Although the ruling Addison seeks to appeal from focuses upon the court's authority to hear from a defendant *ex parte*, the substance of the issue that Addison sought to argue *ex parte* was a request for relief from one aspect of a protective order that had been entered with respect to the discovery of certain documents. There is no right of immediate appeal from such rulings.

And even if Addison's question on appeal were viewed as one addressing the court's authority, rather than an appeal from a discovery ruling, we would nevertheless be required to dismiss the appeal. The Court of Appeals held in *Gruber v. Gruber*, 369 Md. 540, 547, 801 A.2d 1013 (2002): "[A] trial court's order denying a challenge to its jurisdiction is a nonappealable interlocutory order." *Accord In re Franklin P.*, 366 Md. 306, 326, 783 A.2d 673 (2001) (denial of motion to dismiss for lack of jurisdiction not immediately appealable). Addison' s claim that the motion court erred by failing to recognize and exercise the full extent of its authority to hear a motion *ex parte* can fare no better. *Cf. Salvagno v. Frew*, 388 Md. 605, 615, 881 A.2d 660 (2005) ("The mere allegation that a clearly interlocutory order is jurisdictionally deficient should not serve to halt proceedings in the trial court while an appellate court considers whether the allegation has merit.") (quoting *Maryland State Board of Education v. Bradford*, 387 Md. 353, 384, 875 A.2d 703 (2005)).[2]

Addison contends this is an appropriate issue for immediate appeal because his defense counsel's work product could never

---

2. In the *Bradford* case, 387 Md. at 384, 875 A.2d 703, the Court observed that the current scope of the collateral order doctrine is narrower than some earlier cases had held, citing several cases on the subject that are no longer good law:

There is a line of cases, commencing with *Gottschalk v. Mercantile Trust & Deposit Co.*, 102 Md. 521, 62 A. 810 (1906), and *Eastern States Corp. v. Eisler*, 181 Md. 526, 30 A.2d 867 (1943) and extending through *Montgomery Co. Coun. v. Kaslow*, 235 Md. 45, 51, 200 A.2d 184, 187 (1964), *Cohen v. Willett*, [269 Md. 194, 304 A.2d 824 (1973),] and *Waters v. Smith*, [277 Md. 189, 352 A.2d 793 (1976),] in which this Court has indeed indicated that an immediate appeal may lie from an order that is jurisdictionally deficient.

be effectively restored if he waits until after a final judgment to raise the issue that he seeks to raise on interlocutory appeal. An analogous argument was rejected by the Court of Appeals in *In re Foley, supra*, 373 Md. 627, 820 A.2d 587. In that case, the circuit court issued an order for a medical examination of an adult woman pursuant to a motion filed by the woman's sister under Maryland Rule 2–423. The woman's husband filed an immediate appeal. This Court, in an unreported opinion, held that the order was immediately appealable under the collateral order doctrine, and vacated the order for the examination. But the Court of Appeals held that the order for examination was simply a discovery order that was not appealable under the collateral order doctrine. The Court of Appeals was unmoved by the argument that the ruling could not be "effectively" reviewed after a final judgment if the examination had already been completed. Rejecting that argument, the Court stated, 373 Md. at 635–36, 820 A.2d 587 (footnote omitted):

> Turning to the fourth requirement of the collateral order doctrine, the Court of Special Appeals held that the discovery order would be effectively unreviewable on appeal because, "[i]f Michael [the husband] prevails in the guardianship case but cannot take an interlocutory appeal of this order, Sophia's right [asserted entirely by Michael] to refuse to submit to an examination nevertheless will have been lost." The same, however, could be said with regard

---

That view has long been discarded. In more recent times, as noted above, we have made clear that there are only three exceptions to the final judgment rule, and a mere allegation that an interlocutory order exceeded the subject matter jurisdiction of the court is not one of them. In *Gruber v. Gruber*, 369 Md. 540, 547, 801 A.2d 1013, 1017 (2002), we held flatly that "a trial court's order denying a challenge to its jurisdiction is a nonappealable interlocutory order." We have similarly discarded the once-held view that an immediate appeal would lie from an order denying a Constitutional right. *Compare Smith v. Fredericktown Bank*, 258 Md. 141, 142, 265 A.2d 236, 237 (1970) with *Parrott v. State*, 301 Md. 411, 483 A.2d 68 (1984); *see also Old Cedar Development Corp. v. Jack Parker Construction Corp.*, 320 Md. 626, 631–32, 579 A.2d 275, 278 (1990).

to *any* order for a mental or physical examination under Rule 2–423. More broadly, it could be said anytime a trial court grants a discovery order. If an objecting defendant is ordered by a trial court to submit to a deposition, or answer interrogatories, or produce documents, or admit certain facts, and if that defendant ultimately prevails when the trial is terminated, the defendant's asserted "right" to resist the discovery on common law, statutory, or constitutional grounds will have been lost.

The Court of Special Appeals' reasoning, with respect to the fourth collateral order doctrine requirement, would make any order granting discovery immediately appealable. Nevertheless, we have made it clear that discovery orders are only rarely appealable under the collateral order doctrine. The only circumstance in which we have upheld the appealability of interlocutory discovery orders involves a singular situation far removed from the facts of the instant case. *Montgomery Co. v. Stevens, supra,* 337 Md. 471, 654 A.2d 877; *Public Service Comm'n v. Patuxent Valley, supra,* 300 Md. 200, 477 A.2d 759.

*See also Walker v. State,* 392 Md. 1, 12, 895 A.2d 1024 (2006) ("[A] defendant may not appeal, prior to trial, from an order denying a motion to dismiss an indictment because of an alleged speedy trial violation."); *Nnoli v. Nnoli,* 389 Md. 315, 329–30, 884 A.2d 1215 (2005)(an order that "denies a claim of right to avoid participating in some aspects of the legal proceedings in the trial court" is not appealable under the collateral order doctrine); *Dawkins v. Baltimore City Police Department,* 376 Md. 53, 827 A.2d 115 (2003) (interlocutory order denying motion to dismiss that was based on claims of sovereign immunity and public official immunity not appealable); *Pittsburgh Corning Corp. v. James,* 353 Md. 657, 664–65, 728 A.2d 210 (1999) (order denying motion to dismiss based upon claims of inconvenient forum not immediately appealable).[3]

---

**3.** In *Dawkins,* 376 Md. at 64, 827 A.2d 115, the Court "explicitly overrule[d] the collateral order doctrine holding of" *State v. Hogg,* 311

■ In the *Pittsburgh Corning* case, 353 Md. at 666, 728 A.2d 210, the Court quoted the following passage from *Bunting v. State*, 312 Md. 472, 481–82, 540 A.2d 805 (1988):

> "In sum, the idea that an issue is not effectively reviewable after the termination of trial because it involves a 'right' to avoid the trial itself, should be limited to double jeopardy claims and a very few other extraordinary situations. Otherwise, as previously indicated, there would be a proliferation of appeals under the collateral order doctrine. This would be flatly inconsistent with the long-established and sound public policy against piecemeal appeals."

The "singular situation" in which discovery orders might be immediately appealed, involving "trial orders permitting the depositions of [or other discovery from] high level governmental decision makers," *St. Joseph, supra,* 392 Md. at 88, 896 A.2d 304, is simply not present in Addison's case. Accordingly, notwithstanding the interesting question presented by Addison on this appeal, we must dismiss the appeal.

---

Md. 446, 455–57, 535 A.2d 923 (1988)(a case that had held that an interlocutory trial court order rejecting a sovereign immunity defense asserted by a state government agency was immediately appealable under the collateral order doctrine). Underscoring the point that such rulings could no longer be immediately appealed, the Court stated, 376 Md. at 63–65, 827 A.2d 115:

> On several occasions in recent years, this Court has summarily reversed Court of Special Appeals' judgments where the intermediate appellate court had entertained appeals from interlocutory orders rejecting immunity defenses, and we ordered that the appeals be dismissed. *See, e.g., Housing Authority v. Smalls,* 369 Md. 224, 798 A.2d 579 (2002); *Orthodox Jewish Council v. Abramson,* 368 Md. 1, 791 A.2d 129 (2002); *Peck v. DiMario,* 362 Md. 660, 766 A.2d 616 (2001); *Bowers v. Callahan,* 359 Md. 395, 754 A.2d 388 (2000); *Dennis v. Folkenberg,* 354 Md. 412, 731 A.2d 883 (1999); *Samuels v. Tschechtelin,* 353 Md. 508, 727 A.2d 929 (1999).
>
> \* \* \*
>
> As a general rule, interlocutory trial court orders rejecting defenses of common law sovereign immunity, governmental immunity, public official immunity, statutory immunity, or any other type of immunity, are not appealable under the Maryland collateral order doctrine.

APPELLEE'S MOTION TO DISMISS IS GRANTED. APPEAL DISMISSED. COSTS TO BE PAID BY APPEL-LANT.